**GRAY v. DE BRETTON et al.**

No. 1897.

Court of Appeal of Louisiana. First Circuit.
Nov. 17, 1938.

J. Bernard Cocke, of New Orleans, for appellant.

Laycock & Moyse, Taylor Porter & Brooks, and Fred S. LeBlanc, all of Baton Rouge, for appellees.

OTT, Judge.

Plaintiff brings this suit for himself and on behalf of his two minor children, Albert and George Gray, seeking to recover damages for himself and his two minor sons in the total sum of $10,000, of which amount $200 is for himself individually, the sum of $800 for George Gray and the sum of $9,000 for his son Albert Gray, for physical injuries suffered by them on May 29, 1937, when they were run into by an automobile driven by Charles V. Pocorello, a deputy sheriff of East Baton Rouge Parish, while he was conveying a prisoner from Zachary to Baton Rouge. The sheriff of the parish and the surety on his official bond, The Great American Indemnity Company, were made parties defendant and sought to be held liable for the alleged negligence of the deputy in operating the car on the theory that the deputy was at the time of the injury engaged in the performance of an official act.

It is alleged that the said deputy was driving the car of the sheriff and acting under his instructions in arresting the said prisoner whom he was conveying to Baton Rouge for incarceration in jail, and was in the performance of an official duty as a deputy sheriff of the parish; that after arresting the said prisoner and placing him in the said car, the deputy sheriff, in company with another deputy, got in the car and the said Pocorello proceeded to drive the said car to Baton Rouge; that said deputy drove said car at an excessive rate of speed, and while attempting to make a curve in the highway at an excessive speed, the car driven by said deputy struck a guard rail on the side of the road where plaintiff and his two sons were walking, knocking them against and over the guard rail, and throwing them down an embankment, causing the injuries for which damages are sought.

All three defendants filed exceptions of no cause or right of action, and the exceptions filed by the sheriff and his surety were sustained, and the suit as to them was dismissed. The exception filed by the deputy sheriff was overruled. The case is here on an appeal by the plaintiff from the judgment which dismissed his suit as to these two defendants. These two defendants have answered the appeal and ask that the judgment be affirmed insofar as it sustained the exception of no cause or right of action filed by them, but that the judgment be amended so as to maintain all points urged by them in the lower court.

There are four separate and distinct points raised for consideration by the exceptions filed by these two defendants: (1) Whether or not the petition shows affirmatively that the plaintiffs were guilty of contributory negligence in walking on their right hand side of the road instead of on their left side as the law requires; (2) whether or not that part of Article 764 of the Code of Practice making the sheriff responsible for the acts of his deputies has been repealed by Act No. 27 of the Third Extra Session of 1934; (3) if said article has been repealed in its entirety, whether or not there is any law in this state by which the sheriff and his official surety can be held liable for the wrongful acts of a deputy in discharging an official duty; and (4), if there is such liability, whether or not the particular acts of negligence charged to the deputy in the operation of the automobile in which he was conveying a prisoner to jail, constitute such an improper and unfaithful performance of an official duty as to render the sheriff and his official surety liable therefor. We will undertake to discuss these points in the order named.

(1). We do not find that the petition shows on its face any contributory negligence on the part of plaintiff and his two sons. According to the petition, they were walking along the highway (the petition does not say on which side) traversing a curve in the road when they saw the headlights of a fast approaching automobile about 200 feet away coming toward them in a southerly direction, said automobile then approaching the curve in the highway which plaintiff and his two sons were traversing; *that as a precaution to avoid injury by said automobile, they stopped walking, stood still, and hugged the outer edge of the curve against the guard rails on their right hand side of said road; that in doing so, they placed themselves in single file, or Indian fashion, as close to said guard rail as possible.*

Accepting these allegations as true, as we must for the purpose of the exception, while plaintiff and his two sons were on their right hand side of the road, yet they were up against the guard rail and were not walking on the road in the path of vehicular traffic. If there was any negligence on their part in hugging the edge of the road, against the guard rail on the right hand side (and we see no negligence in doing so), certainly such negligence was not the proximate cause of the accident.

(2). Article 764 of the Code of Practice authorizes the sheriff, with the approbation of the judge, to appoint as many deputies as he thinks fit, but he "remains" responsible for them, and these deputies are required to take an oath. Section 3542 of the Revised Statutes (Dart's Statutes, § 7480) authorized the sheriff to appoint as many deputies as he may think necessary, without the approval of any one, but this section was superseded by the above mentioned article of the Code of Practice which required the approval of the judge. Williams, Sheriff, v. Guerre, Superintendent, et al., 182 La. 745, 162 So. 609.

Section 3542 of the Revised Statutes was revived and re-enacted by Act No. 27 of the Third Extra Session of 1934, and Article 764 of the Code of Practice was specially repealed. This had the effect of reviving and amending the old section of

the Revised Statutes, and permitted the sheriff to appoint his deputies, but instead of the approval of the judge being required as provided for in the article of the Code of Practice, the authorization and approval of the Superintendent of the Bureau of Criminal Identification and Investigation was required, and nothing was said in said Act No. 27 about the sheriff "remaining" responsible for the acts of his deputies appointed under the act.

From this situation it is argued that, as the article of the Code of Practice which provides that the sheriff shall "remain" responsible for his deputies has been repealed, there is now no law in this state making a sheriff liable for the acts of his deputies. Counsel for the plaintiff, on the other hand, contends that, while Act No. 27 of the Third Extra Session of 1934 does specifically repeal Article 764 of the Code of Practice, yet that part of the article making sheriffs liable for the acts of their deputies was not intended to be repealed and was not repealed by said act. In support of his argument on this point, counsel gives a very interesting history of the purpose for the passage of said Act No. 27; i. e., in order to place control of the appointment of deputy sheriffs under the then dominant political faction in this state; that there was no reason, in effectuating this purpose of the act, to relieve sheriffs from liability for the acts of their deputies, and it is unreasonable to believe that the Legislature intended to do so.

The repeal of a law is either express or implied; it is express, when it is literally declared by a subsequent law; it is implied, when the new law contains provisions contrary to, or irreconcilable with those of the former law. Civil Code, Article 23. It is only in those cases where there is doubt of the repeal of a law by implication from the passage of another law inconsistent with it that recourse is to be had to the history and purpose of the new law in order to determine whether or not its provisions are contrary to, or irreconcilable with, the old law. Where the new law by express and clear declaration repeals the old law, there is no occasion to seek for the motive and purpose of the Legislature in passing it. As section 2 of the Act No. 27 of the Third Extra Session of 1934, by express declaration, repeals Article 764 of the Code of Practice, we must hold, as did the trial judge, that said article of the Code of Practice has been repealed in its entirety. While the re-peal of this article was not directly at issue nor passed on in the two cases of the State ex rel. Porterie et al. v. Jones, Judge, et al., 181 La. 390, 159 So. 594, and Williams v. Guerre, supra, the court at least assumed that the article was repealed by said act.

■ (3). The rule that makes a sheriff responsible for the acts of his deputies is not based on the doctrine of respondeat superior nor upon special statutory enactment, but this responsibility arises from the fact that the deputy is a public officer, his position being created by statute, acting for and as the representative of the sheriff. The deputy is not the agent or servant of the sheriff, but he is the representative of the sheriff, acting in his stead, and the sheriff is responsible for the acts of his representative while performing the official duties required of the sheriff to the same extent and in the same manner as if those acts had been done by the sheriff himself. Rich v. Graybar Electric Company, 125 Tex. 470, 84 S.W.2d 708, 102 A.L.R. 171, and annotation, p. 182, IX.

It is significant that the framers of the Code of Practice in providing for the appointment of deputies by sheriffs in Article 764, after authorizing the sheriff to appoint deputies with the approval of the judge, added, "but he *remains* responsible for them", clearly indicating that there was then a recognized responsibility of the sheriff for the acts of his deputies, and the framers of the Code did not want to change that responsibility in restricting the power of the sheriff in the appointment of his deputies by requiring the approval of the judge.

■ Act No. 52 of 1880 requires the sheriff to give a bond, the condition of which is that he shall well and faithfully execute and make true returns of all such writs, orders and process as shall come into his hands as sheriff, and shall faithfully do and perform all such other duties as may be required of him by law. The surety on the bond of the sheriff is liable for the violation of an official duty by a deputy, or for his failure to perform his duty faithfully, to the same extent as the surety is liable for the acts done by the sheriff himself.

■ (4). The last and most difficult question presented is whether or not the alleged acts of negligence on the part of the deputy in the operation of the automobile while conveying a prisoner to jail, which negligence caused the injury, is so directly

connected with and part of the performance of an official act by the deputy as to render the sheriff and his surety liable for an injury resulting from such negligence. Our examination of the authorities on this point convinces us that there is considerable conflict and confusion in the decisions, arising, as we believe in some instances, from an attempt to base the liability of the sheriff for the acts of his deputies on the principle of respondeat superior, and in the failure to properly distinguish purely official acts from personal acts closely related to and accompanying these official acts. The driving of an automobile is not an official act of a sheriff, unless the driving of the car directly involves the discharge of an official duty; e. g., if the sheriff or a deputy has a car under seizure, and by reason of the negligent driving or handling of the car, it is damaged, the negligence in that case involves an official act. Likewise, it is the duty of the sheriff and his deputy to secure and protect a prisoner in his custody, and if, by the negligent operation of a car, or the careless handling of a pistol, the prisoner is injured, such negligence and carelessness constitute a violation of an official duty for which the sheriff and the surety on his official bond are liable.

The misconduct and negligence charged to the deputy in this case involve the operation of an automobile on the public highways, and the duty that the deputy owed to pedestrians walking on the highway not to injure them by the negligent operation of his car was the same as the duty of any other motorist driving on the public highways. He owed pedestrians the same duty that he would have owed them had he been driving the car on his own personal business or for his own pleasure. As between him and the prisoner whom he had in charge, the deputy was performing an official act, but as between him and pedestrians on the highway, he was negligently driving a car the same as any other motorist might negligently drive a car on the highway and cause injury to a pedestrian. If the situation had been that the deputy was walking along the street with his prisoner in charge, and for some reason personal to the deputy, he had struck a bystander with his hand or pistol, it could not be said that such an unlawful act on his part was done in the discharge of an official act. But, on the contrary, had he struck the prisoner, when there was no need for it,

obviously his conduct in so doing would have been the violation of an official duty, a misfeasance for which the sheriff and his surety would have been liable.

It could hardly be said that the surety on the official bond of the sheriff contemplated a liability for injury caused third persons by the negligent operation of an automobile by the deputies of the sheriff while transporting prisoners in their custody. In such case, the bondsman for the sheriff would become not only a surety for the official acts of the sheriff and his deputies, but also the public liability insurance carrier against damage to third parties by reason of negligence in the operation of vehicles and other means of conveyance used by the sheriff and his deputies in the discharge of their duties.

The situation is not the same with reference to the liability of the sheriff on his official bond as would be his liability had the deputy been employed by the sheriff to go on a mission purely on the personal business of the sheriff, in which case the deputy would have borne the relation of agent or employee of the sheriff and the doctrine of respondeat superior would apply in fixing liability on the sheriff to third persons. A deputy sheriff can commit an unlawful act while discharging an official duty, and yet not render the sheriff and his surety liable, unless the negligent or unlawful act involves the improper and unfaithful discharge of an official duty.

We think that our conclusions are supported by the reasoning of the Supreme Court in the case of Sanders v. Humphries et al., 143 La. 43, 78 So. 168, and by this court in the case of McVea v. Day et al., 6 La.App. 382. The petition in the former case alleged that John Humphries, while on duty as a deputy sheriff and while acting as deputy, maliciously and recklessly assaulted, shot and wounded the plaintiff with a pistol. There were no facts alleged to show whether or not the deputy fired the shot while in the improper or unfaithful performance of an official act. The first paragraph of the syllabus prepared by the court says:

"A sheriff is not liable, nor is the surety on his official bond liable, in damages for personal injuries to a citizen, inflicted recklessly by a deputy sheriff, unless it was done in violation of an official duty or in an unfaithful or improper performance of an official act."

The case of McVea v. Day et al., supra, is, in our opinion, directly in point. If the reasoning in that case is sound, then we are fully fortified in our conclusion in this case. The plaintiff in that case sought to hold the sheriff and his surety liable for damages inflicted on plaintiff's car by the alleged reckless operation of an automobile driven by the deputy sheriff while on his way to investigate suspected violations of the law. Exceptions of no cause of action filed by the sheriff and his official surety were maintained, and the suit was dismissed, from which judgment of dismissal plaintiff appealed. In passing on the issues in that case, this court, through the late Judge Leche, said:

"Our conclusion is that, in order to hold a sheriff liable for a wrong committed by his deputy, such wrong must have been committed while in the actual performance of an official act, that such wrong must be directly connected with and, because of an official act and must have resulted from the manner in which such official act was performed. * * *

"Our further conclusion is that, in traveling or going to a place where an official act is to be performed, the manner in which a deputy travels, is not part of the official act."

But learned counsel for plaintiff cites and relies on the case of Rhodes v. Jordan et al., La.App., 157 So. 811, where our brethren of the Second Circuit disagreed with the conclusion of this court in the McVea-Day Case. However, a study of the two cases will show that they are not parallel and are not controlled by the same principles of interpretation. In the Rhodes Case, it was the prisoner himself who sued the sheriff for injuries received by reason of the negligent operation of a car by a deputy sheriff who had the plaintiff in the car with him as a virtual prisoner. The plaintiff did not sue the official surety of the sheriff, but joined in the suit the company which carried public liability insurance on the sheriff's car, which car was operated by the deputy in search of suspected violators of the law. The duty owed the plaintiff in that case as a prisoner in the car with the deputy was quite different from the duty owed by the deputy to pedestrians on the highway; as to the former, he owed an official duty to transport him safely and protect him from harm; as to the latter, he owed them only a personal duty not to neg-ligently injure them. Therefore, the injury inflicted by the deputy on his prisoner in that case by the negligent operation of the car was a violation of an official duty for which both the sheriff and his official bondsman were liable, had the latter been joined in the suit.

 We are not unmindful of the fact that there are cases in other jurisdictions which seem to be contrary to our conclusions. However, in view of the apparent conflict in the decisions in other jurisdictions on this point, and as we feel that our conclusions are supported by the decision of the Supreme Court of this State, and the decision of this court, in the two cases cited, we prefer to rest our decision on them. We therefore conclude that the exceptions of no cause or right of action filed by the sheriff and his official surety were properly sustained.

For the reasons assigned, the judgment appealed from is hereby affirmed.