[No. 27651. Department One. May 25, 1940.]

LEE E. NELSON, *Personally and as Guardian ad Litem,*
*Appellant,* v. JEFF BARTELL, *as Sheriff of Grays*
*Harbor County, et al., Respondents.*[1]

*Frank L. Morgan* and *A. P. Wilson,* for appellant.

*Charles T. Peterson* and *Frank Hale,* for respondent
Maryland Casualty Company.

ROBINSON, J.—In May, 1938, Robert Lee Nelson, a
twelve-year-old boy, was injured on a Montesano street
by an automobile driven by Joe Cartell, a deputy sheriff of Grays Harbor county. His father brought this
action, on his own behalf and as his son's guardian *ad*
*litem,* against Cartell, Grays Harbor county, its sheriff,

[1]Reported in 103 P. (2d) 30.

and Maryland Casualty Company, surety on his official bond. The bonding company demurred for want of facts, the lower court sustained its demurrer, and a judgment was entered dismissing it from the action. This appeal is taken from that judgment, and the sole question presented is whether or not the demurrer of the bonding company was properly sustained.

Before stating the allegations of the complaint, it seems desirable to quote certain statutes upon which the right to recover on the bond must rest. The negligent act involved was that of a deputy sheriff. Rem. Rev. Stat., § 4160 [P. C. § 1797], provides as follows:

"Each sheriff may appoint as many deputies as he may think proper, *for whose official acts he shall be responsible to the amount of their* [his] *bond,* and may revoke such appointments at his pleasure; and persons may also be deputed by any sheriff in writing to do particular acts; and *the sheriff shall be responsible on his official bond for the default or misconduct in office of his deputies.*" (Italics above and elsewhere in this opinion are supplied.)

Hence, to recover in such an action, the complaint must state facts showing that the negligent act relied upon constituted, upon the part of the deputy, a "default or misconduct in office."

This is further emphasized by the statute providing for official bonds. Rem. Rev. Stat., § 9931 [P. C. § 509]. The bond is made obligatory on principal and surety for the faithful discharge of all duties required of the officer by law.

§ 9931. "Every official bond executed by any officer pursuant to law shall be deemed and taken to be in force, and shall be obligatory upon the principal and sureties therein for any and all breach of the condition or conditions thereof committed during the time such officer shall continue to discharge any of the duties of or hold such office, and every such bond shall be deemed to be in force and obligatory upon the principal

and sureties therein for the faithful discharge of all duties which may be required of such officer by any law enacted subsequent to the execution of such bond, and such condition shall be expressed therein."

And the same requirement appears in the next section:

§ 9932 [P. C. § 510], "Every official bond executed by any officer pursuant to law shall be in force and obligatory upon the principal and sureties therein to and for the state of Washington, and to and *for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity,* and any person so injured or aggrieved may bring suit on such bond in his or her own name without an assignment thereof."

That is to say, the bond may be sued upon by persons injured or aggrieved "by the wrongful act or default of such officer in his official capacity."

It *is the* official duty of a deputy sheriff, as prescribed in Rem. Rev. Stat., § 4167 [P. C. § 1798], to

" . . . serve or execute, according to law, all process, writs, precepts, and orders, . . . to him directed, and he shall attend upon all courts of record at every session."

Paragraph VIII of appellant's complaint is as follows:

"That on or about the 17th day of May, 1938, the superior court of the state of Washington for Grays Harbor county was holding a jury term of court; that the sheriff of Grays Harbor county, through and in the person of the defendant, Joe Cartell, was in attendance of said session of court, it being a court of record, and had been by said court commanded to serve certain subpoenas on witnesses in a certain criminal action then on trial, to-wit: State vs. Parker, cause No. 34522, they being lawful orders. The execution of which order and the service of said subpoenas required Cartell to go to and return from the city of Aberdeen, and in doing so, the best interest of the court and the sheriff's office required Cartell to use an automobile in the

execution of the court's orders and the service of said subpoenas; that Cartell, while on said errand and while engaged in carrying out the lawful orders of the court, drove and operated said automobile in a northerly direction on south First street in Montesano, between Marcey avenue and Broadway street, at a rate of speed greater than was then and there safe under all the surrounding and attending facts and circumstances then and there prevailing, to-wit: in excess of 40 miles per hour; he, Cartell, having failed to operate said automobile in a careful and prudent manner and at speed reasonable under the conditions existing at said time and place, taking into account the amount of and character of traffic and the obstruction to view ahead along said street so as to unduly endanger the life, limb and property of other persons, in particular Robert Lee Nelson, who was then and there traveling on said First street, and negligently drove and operated said automobile so as to come into violent collision with Robert Lee Nelson and inflict on him great physical and mental pain, anguish, suffering and damage, permanently injuring said child."

The appellant states another fact in his brief, not pleaded, or, at least, not clearly so:

"The allegations of the complaint as to the official character of the sheriff, his deputy Cartell, and the bonding company, are in the usual form. The deputy Cartell had been to Aberdeen to serve subpoenas in a criminal case, and was returning to his duties before the superior court in Montesano when he collided with the newsboy on the street and injured him."

The respondent also argues the case upon the premise that deputy Cartell had been to Aberdeen to serve a subpoena and was returning to his duties before the superior court when he collided with, and injured, young Nelson. We assume that this action of the parties amounts to a stipulation that this circumstance shall be given the same weight in our consideration of the case as if it had been expressly alleged in the complaint and admitted by the demurrer.

Respondent contends that the demurrer was correctly sustained on two theories:

First, it is said that the bond can be resorted to only by the person with reference to whom the official act is being performed. For example, if a deputy were conveying a prisoner to jail and drove at a wildly reckless speed and overturned, injuring the prisoner and, at the same time, a pedestrian on the sidewalk, the prisoner might resort to the bond, but not the pedestrian. This contention is supported by a number of cases in other jurisdictions, of which the very recent case of *Gray v. De Bretton,* 192 La. 628, 188 So. 722, is, perhaps, the most persuasive. A number of earlier decisions are collected and analyzed in a note in 19 A. L. R. 73, leading up to the following conclusion:

"The majority of the few decisions upon the question of the right of an individual to maintain an action upon the bond of a peace officer running to the public, and conditioned upon the faithful performance of his duties as a guardian of the law, are to the effect that such an action cannot be maintained by a stranger to the contract, such as an individual member of the public, to recover damages or penalty for injuries sustained by him at the hands of the officer; at least, in the absence of legislation expressly giving him a right of action on the bond."

We regard the question as foreclosed, however, by our own decisions. It is clearly held, in *Greenius v. American Surety Co.,* 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F, 1134, that, in some instances at least, third parties injured by the misconduct of an officer, while performing an official act, can resort to the bond, and we do not feel at liberty to now depart from that rule.

The respondent's second contention is, and this appears to have been the theory adopted by the trial

court, that the complaint does not allege facts showing that Cartell was performing an official act at the time he injured young Nelson. It is said that he was merely driving an automobile. In reply to this, appellant points out that it is alleged that he was engaged in the performance of the official duty of serving subpoenas, upon the order of the court. Respondent says he performed that act at Aberdeen. The appellant replies that the act was not completed until the deputy made his return of service to the court.

We think it will be realized, from what has been said, that a close question is presented by the respondent's second contention. It is to be answered wholly by statutory construction, for the doctrine of *respondeat superior* is in no way involved. As far as we have been advised by counsel and by our own researches, we have no decision in our reports which is at all decisive. We have not overlooked the case of *Biehn v. Bannick*, 166 Wash. 465, 7 P. (2d) 567. We do not regard it as decisive, because, in that case, the act of the deputy (instituting a malicious prosecution) was clearly wilful, personal, and wholly outside his duties as a deputy.

Although the reasoning in support of respondent's theory, at first blush, seems somewhat technical and refined, it appears that the theory finds support in all or nearly all the applicable decisions of the courts of our sister states. Of the cases dealing with the subject, that of *Clement v. Dunn*, 114 Cal. App. 60, 299 Pac. 545, is, factually, the nearest in point. In that case, a demurrer was sustained which admitted the following allegations:

"VII. That upon said day and time the defendant John Dunn, as a deputy sheriff of Los Angeles county, California, and acting under the orders and control of William I. Traeger, sheriff, was upon his way to serve

a warrant of arrest, and with this warrant and other warrants of arrest in his possession and acting in his official capacity of deputy sheriff in such duties, and while driving said automobile as alleged in paragraph six so carelessly, wrongfully and negligently, and without due right for the safety and convenience of others upon said highway and this plaintiff upon said highway, and while operating said automobile at a speed of upwards of forty-five miles an hour, drove said automobile in such careless, negligent and reckless manner that it came in violent collision with the automobile of the plaintiff."

In ruling upon the demurrer, the court said, in part:

"No breach of official duty appears. The liability of a sheriff for the acts of his deputies is not based on the theory that the relation of master and servant or principal and agent exists, but on the theory that the deputy is the representative of the sheriff and his acts are those of the sheriff. [Citing many cases.] *Inherent in this theory, on which the sheriff is held liable for the acts of his deputies, is this limitation, the acts must be official in character.* . . . In *People v. Beach,* (1911) 49 Colo. 516, [37 L. R. A. (N. S.) 873, 113 Pac. 513]), the court expressed the correct rule as follows: 'The true distinction is, we think, that liability does not attach unless the act complained of is an official act, constituting a part, and directly connected with the doing, of an official act.'

"Tested by this standard, the negligent actions of Deputy Dunn give rise to no liability on the part of the sheriff and the sureties on his official bond. *The purpose of his expedition may have been to perform an official act, but the character of that which he was doing at the time plaintiff suffered injuries was not official.* The sheriff had not yet begun to act, for he is not a county chauffeur. This same conclusion was reached in *McVea v. Day,* (1927) 6 La. App. 383, and *Usrey v. Yarnell,* (1930) 181 Ark. 804 [27 S. W. (2d) 988]. In the McVea case the deputy was going to investigate reported law violations. In the Usrey case he was on his way to arrest some escaped prisoners. In each case the sheriff was held not liable for the

negligent driving of his deputy. In the first case the court said: 'One further conclusion is that, in traveling or going to a place where an official act is to be performed the manner in which the deputy travels, is not part of the official act.' A like expression appears in the Usrey opinion: 'There is here no relation of master and servant . . . He was not acting under color of his office while driving his automobile, and he was not engaged in any official conduct at the time he collided with plaintiff's automobile. He was driving at his own volition to a place where, upon his arrival, he expected to perform an official act, but the collision occurred before his arrival there.' "

We quote also from the recent decision of *Humphrey v. Ownby*, 104 S. W. (2d) (Mo. App.) 398. The entire opinion should be read, however, in order to appreciate its full import. In this case, it was alleged that the plaintiff was injured by the negligent driving of a deputy sheriff who was on his way to investigate a reported murder and to make an arrest:

"The question to be determined on the demurrer, therefore, is whether the defendant Ownby, at the time of the accident, was performing an official or individual act, and if official, is the sheriff liable to the plaintiff? . . .

"The allegations of the petition show that the deputy, at the time of the accident, was not performing any official act. He was merely on his way to a place to investigate a reported crime and to make an arrest, if the crime was committed, and he had an opportunity to do so. Under the state of facts pleaded, the deputy was not performing any official act at the time of the alleged collision. Traveling or going to a place for the performance of an official act by a deputy sheriff is not a part of the official act, hence an injury caused by his negligence in operating the automobile while driving to a place where he was needed does not make a sheriff liable. *Usrey v. Yarnell*, 188 Ark. 804, 27 S. W. (2d) 988. . . .

"For a sheriff to be liable to a third person the injury must grow out of an official wrong, and the careless

operation of an automobile is not such a wrong, unless such operation violates or injuriously affects the rights of some person with whom the sheriff is dealing officially at the time. As long as the sheriff discharges his whole duty to the person with whom he is dealing officially he commits no official wrong with respect to such person, and any incidental wrong of his to a third person is a private wrong, because such wrong does not grow out of any official misfeasance or malfeasance. 57 C. J. § 955 p. 1043."

In addition to the various cases cited in the foregoing quotations, see *Gray v. De Bretton,* 184 So. (La. App.) 390, and the second opinion in the same case reported in 192 La. 628, 188 So. 722. The second *De Bretton* opinion was rendered since this case was decided in the superior court, and is the latest we have been able to find dealing directly with the subject. In that case, it was alleged that a deputy sheriff, in conveying a prisoner to jail, drove at such an excessive and negligent rate of speed that, in attempting to round a curve, he went off the roadway and injured the plaintiff and his two sons who were walking along the road. On appeal, the supreme court of Louisiana said, in part:

"According to the rule of law referred to, in order to hold the sheriff and the surety in this case, the wrongful act of which plaintiff complains must have been with and because of an official act, and must have resulted from the manner in which that official act was performed. The official act that Pocorello, the deputy, was performing in this case was the act of conveying the prisoner White to the parish jail in the City of Baton Rouge. It would seem that if the deputy violated any duty that he owed to plaintiff and his children, the duty violated was not an official duty but was an individual and private duty owed by the deputy to all pedestrians upon the public highway.

"The purpose of an official bond is to provide indemnity against malfeasance, nonfeasance and misfeasance in public office. Such a bond can not be construed so

as to operate as a policy of insurance in favor of the traveling public against damage in an automobile collision.

"The liability in this case, if any, is the liability of the deputy sheriff and of nobody else. The act of the deputy in causing injury, if he did cause injury, was not committed by color of his office or by virtue of his office, nor was it an act of malfeasance, nonfeasance or misfeasance as those words are ordinarily understood in our statutes."

Appellant contends that the identical question before us was decided by the supreme court of Kentucky in *Fidelity & Casualty Co. v. Boehnlein,* 202 Ky. 601, 260 S. W. 353. In our opinion, that case is distinguishable from the case before us. While patrolling his beat on a motorcycle, a policeman ran into, and injured, Boehnlein. In holding that Boehnlein could recover on the policeman's official bond, the court said:

"The whole question here then is, was Hamilton's act in negligently driving the motorcycle against plaintiff done by virtue of his office?

"Admittedly he was patrolling his beat in the manner and with the means provided by the city to enable him to do so. *In driving the motorcycle he was doing precisely what his duties required him to do."*

In other words, the use of the motorcycle was not merely incidental. It was the policeman's official duty to constantly patrol a beat on a motorcycle. We have no statute making the driving of an automobile the official duty of a deputy sheriff, and the complaint goes no further than to allege that

" . . . the best interest of the court and the Sheriff's office required Cartell to use an automobile in the execution of the court's orders and the service of said subpoenas; . . . "

The case of *United States Fidelity & Guaranty Co. v. Samuels,* 116 Ohio St. 586, 157 N. E. 325, 53 A. L. R.

36, also relied on by appellant, cites, quotes, and follows the *Boehnlein* case, and properly, since the only substantial difference in the cases is that, in the *Samuels* case, it was the policeman's duty to use an automobile instead of a motorcycle.

The case of *Hanratty v. Godfrey*, 44 Ohio App. 360, 184 N. E. 842, is directly contra to respondent's first theory, and is also contra, in its result, to the *De Bretton* cases, *supra*, upon the reasoning of which respondent relies to support its second theory, but beyond this it is of no assistance to appellant. In the *Hanratty* case, a deputy sheriff, while transporting prisoners to the state penitentiary by automobile, negligently collided with the plaintiff's car. The court of appeals of Ohio, Delaware county, following the earlier *Samuels* case, which we have just discussed, held that the plaintiff stated a good cause of action against the sheriff and his bondsman; but there is this vital distinction between the *Hanratty* case and the case at bar.

The deputy, in that case, was, as to his prisoners, clearly guilty of a default in his official capacity, and that very default was also the proximate cause of the injury to the plaintiff in the case. Hence, it was held that the injury to the plaintiff in the *Hanratty* case was caused by the deputy's default or misconduct in office. But, in this case, it is not alleged or charged that deputy Cartell was guilty of any default in serving the subpoenas in Aberdeen, nor is it alleged in the complaint that he committed a default of any kind, other than that of driving negligently on a Montesano street. Was that a "default or misconduct in office," or a "wrongful act or default of such officer in his official capacity?" If it was not, no cause of action is stated against the sheriff and the appellant as surety on his bond; for, as it appears from §§ 4160 and 9932 of the statutes, quoted at the beginning of this opinion, a sheriff is only liable

on his bond with respect to an act of his deputy if such act constituted a "default· or misconduct in office" (§ 4160), and official bonds may be resorted to by those persons only who may be aggrieved or injured by the wrongful act of the officer "in his official capacity" (§ 9932).

As we have seen, the majority of the cases from other jurisdictions support the conclusion reached by the superior court. Those authorities are, of course, not binding upon this court, and this is especially the case in the instant matter because of slight differences in the wording of the statutes involved; but when, with the express language of our own statutes in mind, thoughtful consideration is given to such questions as the following, we reach the same result: Why are official bonds required by law, and particularly from sheriffs and other police officers? Is it not because, when they become officers, they are endowed as such with special and extraordinary official powers which are peculiarly susceptible of abuse, such as, for example, the power to arrest, imprison, search and seize, distrain and sell, etc.? And is it not reasonable to conclude that the official bonding system was created with the sole purpose and intention of protecting the public against their abuse of the extraordinary powers conferred upon them as officers; and that the system is in no way intended to furnish protection against the abuse of those general and ordinary powers which they, as non-officials, formerly possessed and were accustomed to exercise? One would logically expect that to be the case; and, from the explicit language used in our statutes, such as "default or misconduct in office," and the provision that such bonds may be resorted to "for the use and benefit of" persons who may be injured or aggrieved "by the . . . default of

such officer in his official capacity," we think that it is the case.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.