AETNA CASUALTY & SURETY COMPANY ET AL v. W. R. CLARK.
(ALBERT WEST, JR., ET AL).

No. 7581. Decided March 19, 1941.
Rehearing Overruled April 23, 1941.
(150 S. W., 2d Series, 79.)

*S. S. Searcy* and *Johnson & Rogers,* of San Antonio, for plaintiff in error.

It appearing from the face of the petition of plaintiff and the uncontradicted evidence that the sole act of the deputy sheriff upon which liability is sought against the surety on the sheriff's bond consists of his alleged negligence in operating an automobile on the public highway, and the petition further showing that said bond is a statutory bond conditioned upon the sheriff's faithful performance of duty in office, and failed to show any negligent official act of said deputy but alleges only a personal wrong, the sheriff and his surety and not legally bound to make good for such injury. People v. Beach, 49 Colo. 516, 113 Pac. 513; Clement v. Dunn, 114 Calif., App. 60, 299 Pac. 545; Williams v. Priddy, 118 Ark. 137, 64 S. W. (2d) 553; Rich v. Graybar Electric Co., 125 Texas 470, 84 S. W. (2d) 708, 102 A. L. R. 171.

*Charles J. Lieck, Russell B. Wine* and *Leonard Brown,* all of San Antonio, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was brought in the District Court of Bexar County by W. R. Clark as plaintiff, and was against J. E. Turk, Albert West, Jr., and the Aetna Casualty & Surety Company as defendants. The parties will be designated as in the trial court. The purpose of the suit was to recover damages growing out of a wreck between the car driven by plaintiff and one driven by J. E. Turk, said accident occurring June 13, 1936. Judgment was rendered against Turk individually, and no appeal was taken from such judgment. An instructed verdict was given in favor of Albert West, Jr., and the Surety Company. The Court of Civil Appeals reversed and remanded the cause, and in its opinion will be found an exhaustive statement of all facts necessary to a correct decision of the cause. 126 S. W. (2d) 569.

At the time of the accident mentioned Albert West, Jr., was Sheriff of Bexar County, and J. E. Turk was his deputy. The Aetna Casualty & Surety Company was surety upon the official bond of West as sheriff. On the night of the accident, a wreck occurred on the highway from San Antonio to Seguin about eighteen miles east of San Antonio. Turk and another deputy

sheriff went in Turk's automobile to the scene of this accident. It is claimed by plaintiff that while at the scene of the wreck one of the deputies arrested a man by the name of Hoenke for drunkenness. Hoenke had been seriously injured in the wreck. A negro had also been hurt, and these two persons were put in the back of Turk's car. So far as the direct testimony is concerned, these parties were put into the car in order that they might be taken to the hospital in San Antonio. Based upon the claim that Hoenke had been arrested for drunkenness, it is plaintiff's further contention that he was being carried to San Antonio by the officers, either to be taken before a magistrate, or to be retained in custody awaiting a hearing upon a charge of drunkenness. Other parties had been injured in the wreck and an ambulance took such parties to San Antonio for treatment. There was no room in the ambulance for Hoenke and the negro. Turk was following the ambulance, and a short distance from the limits of San Antonio had a wreck with the car driven by plaintiff. Plaintiff and his son were injured in this wreck, and damages was done to plaintiff's car. Turk was also injured in this wreck. Hoenke died the next day, either because of injuries received in the first wreck or from injuries received in the second wreck, or both. The findings of the jury are not in the record, but the inference is that Turk was found guilty of negligence in running his car in several respects. As above shown, Turk did not appeal from the judgment against him based on his negligence, and the trial court instructed a verdict in favor of the sheriff and the surety on his bond.

For the purpose of this decision we shall assume that the evidence was sufficient to authorize submission of issues of fact to the effect that the deputy sheriff placed Hoenke under arrest, that the circumstances were such that he was authorized to arrest him without a warrant, and that he was legally authorized to convey said Hoenke back to the City of San Antonio for detention on a charge of drunkenness in a public place. This will then bring us to the crucial question which has been ably argued by counsel by both parties. Owing to the importance of the question we have given it a very exhaustive study. Briefly, it may be thus stated:

Is a sheriff and his official surety liable in damages to a third person for the negligence of the deputy in driving his automobile while said deputy is upon a mission connected with an official transaction?

We shall for this decision assume that it is settled that a sheriff is liable for the conduct of his deputy, acting by virtue

of his office, in negligently injuring the person with whom the deputy has a direct official relation; and also that he is liable for the conduct of his deputy, acting by virtue of his office, when injuries result to a third person as a result of a wrongful or negligent act of the deputy directed towards a person with whom he has an official relationship.

We think it safe to say that every case of our courts may be classified under one of these two assumptions. However, we think the question here is more restricted, and has never been directly decided by our courts, so far as we have been able to determine.

By Article 6866, Revised Statutes 1925, it is provided that a sheriff shall execute a bond conditioned (among other things) "that he will faithfully perform all such duties as may be required of him by law." By Article 6870 of the Revised Statutes 1925 it is provided that "sheriffs shall be responsible for the official acts of their deputies." It is of course fundamental that sheriffs and their official sureties are bound only by the "official" acts of their deputies. Rich v. Graybar Electric Co., 125 Texas, 470, 84 S. W. (2d) 708, 102 A. L. R., 101, and Annotation; Continental Casualty Co. v. Miller, 135 S. W. (2d) 501, and authorities cited.

■ Difficulty often arises in determining just what is an "official" act, and it is hard to state any definite rule by which the question may be settled. We think we are safe in saying that practically the unanimous weight of decisions touching this precise question is to the effect that a sheriff and his official surety is not liable to third persons for the negligent acts of a deputy in a case of this kind. While not approving the reasoning in all of the cases, yet we feel constrained to adopt their result, and think that from them as a whole there may be deduced the guiding principle for decision. For this reason we briefly note a few of the cases.

The case of McVey v. Gross, 11 Fed. (2d) 379, is a decision by Judge Atwell of the U. S. District Court, involving a suit against the United States Marshall and his official surety. It was based on the acts of a deputy by the name of Hightower, who had negligently injured a pedestrian while driving his car in connection with an official mission. The bond of the marshall, among other things, was conditioned upon the "faithful performance" of official duties. In the opinion it is said:

"Hightower did not act 'colore officii' in any such sense or circumstance as would render his principal liable. In driving along

a highway, it is charged that he so negligently operated the vehicle in which he was driving as to injure fatally a pedestrian who happened to be crossing that highway. Manifestly this action was not a failure to 'faithfully perform' any duty of the office of marshal. It was a personal wrong. It was a wrong for which the marshal and his surety had not bounden themselves to make good or remedy. The liability of the surety is strictissimi juris. In order to hold such a surety, there must be a violation of the condition of the bond. The negligent act of running into a passing pedestrian was not committed virtue officii."

To like effect see the following cases: Usrey v. Yarnell, 181 Ark. 804, 27 S. W. (2d) 988; Williams v. Priddy, 188 Ark. 137, 64 S. W. (2d) 553; Clement v. Dunn, 114 Cal. App. 60, 299 Pac. 545; Filarski v. Covey, 75 Cal. App. 353, 242 Pac. 874; Robertson v. Smith, 16 Geo. App. 760, 85 S. E. 988.

These cases, while persuasive, do not fully and convincingly show reasons for their result. We therefore briefly note expressions in a few of the other cases.

In Nelson v. Bartell, 4 Wash. (2d) 174, 103 Pac. (2d) 30, by the Supreme Court of Washington, there is an exhaustive discussion of the question. That case understakes to distinguish the cases principally relied upon by plaintiff in the present suit. In that opinion it is said:

"As we have seen, the majority of the cases from other jurisdictions support the conclusion reached by the superior court. Those authorities are, of course, not binding upon this court, and this is especially the case in the instant matter because of slight differences in the wording of the statutes involved, but when, with the express language of our own statutes in mind, thoughtful consideration is given to such questions as the following, we reach the same result: Why are official bonds required by law, and particularly from sheriffs and other police officers? Is it not because, when they become officers, they are endowed as such with special and extraordinary official powers which are peculiarly susceptible of abuse, such as, for example, the power to arrest, imprison, search and seize, distrain and sell, etc.? And is it not reasonable to conclude that the official bonding system was created with the sole purpose and intention of protecting the public against their abuse of the extraordnary powers conferred upon them as officers; and that the system is in no way intended to furnish protection against the abuse of those general and ordinary powers

which they as non-officials, formerly possessed and were accustomed to exercise? One would logically expect that to be the case, and, from the explicit language used in our statutes, such as, 'default or misconduct in office' and the provision that such bonds may be resorted to 'for the use and benefit of' persons who may be injured or aggrieved 'by the default of such officer in his official capacity,' we think that is the case."

To like effect is the language in 24 R. C. L., page 956, where it is said:

"Generally speaking, the purpose of an official bond is to provide indemnity against malfeasance and misbehavior in public office, the *misuse of powers belonging to the office,* and the assumption, under guise of official action, of powers not belonging to it."

The case of Gray v. De Bretton, 192 La. 628, 188 So. 722, by the Supreme Court of Louisiana, contains another exhaustive opinion. The facts are almost identical with the facts of the present case. From the opinion we take the following statement:

"The purpose of an official bond is to provide indemnity against malfeasance, nonfeasance and misfeasance in public office. Such a bond can not be construed so as to operate as a policy of insurance in favor of the traveling public against damage in an automobile collision.

"The liability in this case, if any, is the liability of the deputy sheriff and of nobody else. The act of the deputy in causing injury, if he did cause injury, was not committed by color of his office or by virtue of his office, nor was it an act of malfeasance, nonfeasance or misfeasance as those words are ordinarily understood in our statutes.

"In passing upon this phase of the case, the Court of Appeals, 184 So. 390, 394, as we see it, has correctly stated the legal principle governing the point at issue, viz.—

" 'The driving of an automobile is not an official act of a sheriff, unless the driving of the car directly involves the discharge of an official duty; e. g., if the sheriff or a deputy has a car under seizure, and by reason of the negligent driving or handling of the car, it is damaged, the negligence in that case involves an official act. Likewise, it is the duty of the sheriff and his deputy to secure and protect a prisoner in his custody, and if, by the negligent operation of a car, or the careless handling of a pistol, the prisoner is injured, such negligence and carelessness constitutes a violation of an official duty for which the sheriff and the surety on his official bond are liable.

" 'The misconduct and negligence charged to the deputy in this case involve the operation of an automobile on the public highways, and the duty that the deputy owed to pedestrians walking on the highway not to injure them by the negligent operation of his car was the same as the duty of any other motorist driving on the public highways. He owed pedestrians the same duty that he would have owed them had he been driving the car on his own personal business or for his own pleasure. As between him and the prisoner whom he had in charge, the deputy was performing an official act, but as between him and pedestrians on the highway, he was negligently driving a car the same as any other motorist might negligently drive a car on the highway and cause injury to a pedestrian. If the situation had been that the deputy was walking along the street with his prisoner in charge, and for some reason personal to the deputy, he had struck a bystander with his hand or pistol, it could not be said that such an unlawful act on his part was done in the discharge of an official act. But, on the contrary, had he struck the prisoner, when there was no need for it, obviously his conduct in so doing would have been the violation of an official duty. A misfeasance for which the sheriff and his surety would have been liable.

"It could hardly be said that the surety on the official bond of the sheriff contemplated a liability for injury caused third persons by the negligent operation of an automobile by the deputies of the sheriff while transporting prisoners in their custody. In such case, the bondsman for the sheriff would become not only a surety for the official acts of the sheriff and his deputies, but also the public liability insurance carrier against damage to third parties by reason of negligence in the operation of vehicles and other means of conveyance used by the sheriff and his deputies in the discharge of their duties."

The case of Humphrey v. Ownby, 104 S. W. (2d) 398, by the Court of Appeals of Missouri, is also an able one, and in our opinion furnishes a clear basis of distinction of various cases, as well as the guiding principle in such cases as the present one. In that case it is said:

"We can imagine circumstances where the official bond of the sheriff would be liable in case of injury to a third person. Where the act of the officer is wrongful in itself and affects the rights of the person with whom the officer has official business and such act incidentally injures a third person with whom the officer has no official business, such as wrongfully shooting at an offender of the law for the purpose of apprehension and hitting a bystander, or where the officer, in the

execution of process, arrests the wrong person or seizes the wrong property, the act would be official, but where the third person is injured or damaged by the act of the officer which constitutes no wrong against the person with whom he has official business and not in seizing under process the property or person of another with whom he has no official business, the official bond of the officer is not liable, the act not being done under color of office. For a sheriff to be liable to a third person the injury must grow out of an official wrong, and the careless operation of an automobile is not such a wrong, unless such operation violates or injuriously affects the rights of some person with whom the sheriff is dealing officially at the time. As long as the sheriff discharges his whole duty to the person with whom he is dealing officially he commits no official wrong with respect to such person, and any incidental wrong of his to a third person is a private wrong, because such wrong does not grow out of any official misfeasance or malfeasance."

■ Plaintiff relies strongly upon Hanratty v. Godfrey, 44 Ohio App. 360, 184 N. E. 842, and U. S. Fidelity & Guaranty Co. v. Samuels, 116 Ohio St. 586, 157 N. E. 325, both of which are Ohio cases. He relies also upon other cases which may be easily distinguished, in light of what has been said above. We note particularly, however, the Samuels case, because we think it discloses its weakness on its face, and also furnishes a point of departure which gives opportunity to emphasize the view we have taken herein. The authorities generally agree that an obligation "to faithfully perform all official duties" furnishes liability in cases of malfeasance, nonfeasance and misfeasance. Manifestly there is no malfeasance or nonfeasance in the present case. If any wrong is alleged it is one of misfeasance. The decision in the Samuels case is bottomed squarely upon the definition of the word "misfeasance." We think the court erred in applying the meaning of this word to a situation such as we have have. Misfeasance, as applied to official conduct, necessarily implies misuse of official power as against one with whom an officer has an official relation. One of the definitions quoted by the court in the Samuels case is as follows: "The failure to use, in the performance of a *duty owing to an individual,* that degree of care, skill and diligence which the circumstances of the case reasonably demand." The emphasized portion of this definition clearly discloses that as to misfeasance in official conduct the breach is towards the one to whom the official relationship is sustained. The same is emphasized by the expression in 46 Corpus Juris, page 1045, wherein it is said: "But officers are liable to an individual for the acts of their deputies *where such*

*officers owe a duty to such individuals.* This rule is particularly applied in the case of sheriffs."

In this instance the deputy sustained no official relationship to plaintiff. As to plaintiff, he was performing no official act. It is obvious, therefore, that as to plaintiff there was no "misfeasance" in official conduct. There was no "misuse of powers belonging to the office." He did not owe to plaintiff the same duty he owed to Hoenke (assuming that Hoenke was his lawful prisoner). He owed to plaintiff the same duty he owed to all other persons using the highway, and that duty was owed by him in his capacity as an individual or ordinary citizen.

This thought is particularly emphasized in the quotation from the Missouri and the Louisiana cases. It is in essence stated in some of the other opinions. We think it furnishes a solid ground upon which liability in the present instance is denied. As clearly stated in the Louisiana case, to hold otherwise "the bondsman for the sheriff would become not only a surety for the official acts of the sheriff and his deputies, but also the public liability insurance carrier against damage to third parties by reason of negligence in the operation of vehicles and other means of conveyance used by the sheriff and his deputies in the discharge of their duties.

In the case of Ivy v. Osborne, 152 Tenn. 470, 279 S. W. 384, by the Supreme Court of Tennessee, it is said: "The rule absolving public officers from liability to third persons for the extra-official acts of their deputies rests upon obvious considerations of public policy, and the perplexities and embarrassment that would spring from a contrary rule." Practically all official bonds are now made by surety companies. To supplement liability to the degree indicated above, would greatly increase the difficulty. of obtaining reliable and solvent sureties. We note in our investigation that in one or more states the legislature has recently declared that sheriffs and their sureties shall not be liable in such case as the present one.

The conclusion we have reached absolves both the sheriff and his official surety from liability to plaintiff in this case, and the judgment of the Court of Civil Appeals is therefore reversed, and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court March 19, 1941.

Rehearing overruled April 23, 1941.