This is an action in damages by the widow and minor children of Warren M. Britt against the Sheriff of Sabine Parish, his official surety and one of his deputy sheriffs for the alleged wrongful death of Warren M. Britt at the hands of the defendant deputy sheriff while in the performance of an official act. The District Court maintained the exception of no cause or right of action filed on behalf of the sheriff and his surety. Plaintiff brings this appeal.
The petition sets forth that the defendant sheriff had been duly elected and qualified and that the defendant surety company had executed a bond guaranteeing the performance of his official acts and that the deputy responsible for Britt's death was a duly appointed deputy sheriff acting in his official capacity as such and performing an official act authorized by law, but performing such official act in an improper, unfaithful and wrongful manner. A full description of the circumstances surrounding Britt's death are contained in paragraphs 4, 5, 6, 7 and 8 of the petition, as quoted below:
"That for some time prior to March 30, 1947, Warren M. Britt had been suspected by Sheriff Phillips and his deputies, including the defendant C.C. Merritt of transporting whiskey which he had in his *Page 282 
possession for sale contrary to law; that he was suspected of transporting such unlawful whiskey in a Jeep which he habitually drove; that about two weeks prior to the aforesaid date the said Britt had been arrested and charged with possessing intoxicating liquors for sale, and the defendant C.C. Merritt was among the group of officers making the arrest; that said Sheriff Phillips and Deputy Merritt had had numerous complaints that Britt was transporting unlawful liquor.
"That about Noon on or about the 30th. day of March, 1947, the said Britt drove his Jeep to the vicinity of Sabine River in the Pendleton Community of Sabine Parish, where Merritt was serving as a deputy sheriff, to the home of one Ivy Morris, a fisherman; that the said Merritt knowing of Britt's presence there armed himself with a ten gauge shotgun and placed himself in a position near or behind a tree on the edge of the plain road along which Britt would have to pass on returning from the house of Ivy Morris.
"That as Britt approached in his Jeep Merritt stepped from behind or near the tree and ordered Britt to halt; that the purpose of Merritt in so doing was to search the vehicle of Britt for unlawful intoxicating liquors, which Britt was suspected of transporting, or to make other lawful investigation, and which act of searching said vehicle was lawful and within the implied and express orders and duties of his office as deputy sheriff. That upon Britt's immediate failure to halt, Merritt fired one shot from said shotgun over the head of Britt, and fired another into the right front seat of the Jeep; and after Britt had passed the tree near or behind which Merritt was standing and was approximately twenty feet beyond the place where he met Merritt, Merritt fired a third shot from the shotgun, striking Britt, who at this time had his back squarely turned to Merritt, in the back of the head and in the back. That the load from the shotgun was a mixed load of squirrel and buck shot; that it caused the said Britt serious shock and loss of blood, from which as a natural consequence and proximate result he died on April 1st., 1947. That at the time of the shooting the said Britt was unarmed and there was no weapon in said vehicle.
"That the said Jeep continued on from the scene of the shooting, striking and stopping against some sweet gum trees; that the said Merritt then walked to the Jeep where Britt was groaning with pain and in a seriously wounded condition, observed the helpless state and condition of Britt which he had caused, and refused and neglected to render him assistance or to take him to a doctor; that the said Merritt walked on past the said Jeep and reported to a certain neighbor what he had done; that later Merritt retraced his steps past the said Jeep still failing, neglecting and refusing to render aid and assistance, but instead went to his (Merritt's) home about two hundred yards away, got in his truck, again passed the wounded and suffering Britt and drove about eighteen miles to the home of the defendant, Sheriff Phillips, where he reported that he had had to shoot Britt to stop him.
"That it was approximately two hours after the shooting above referred to that Britt was removed from the Jeep and carried to the hospital in Many, Louisiana, where he died on April 1st., 1947, after suffering prolonged physical agony, mental pain and anguish, loss of blood and shock, all the natural and proximate consequences of the unfaithful, improper, and wrongful carrying out of an official act on the part of the said Merritt, acting in his official capacity as deputy sheriff of the defendant Sheriff Phillips, and to the damage of the said Britt and his surviving widow and minor heirs as hereinafter set forth."
Briefs for plaintiff and defendants cite the same cases, five in number, which deal with the liability of a sheriff and his bondsman for the acts of a deputy.
In the case of McVea v. Day, 6 La. App. 382, the plaintiff sought to hold the sheriff and the surety liable for damages inflicted on plaintiffs car by the alleged negligence of a deputy sheriff who was in his automobile on his way to investigate suspected violations of the law. In maintaining the exception of no cause or right of action, the First Circuit Court of Appeal stated that in order for the sheriff and his surety *Page 283 
to be liable, the wrong must have been committed while in the actual performance of an official act and must have resulted from the manner in which such official act was performed, and concluded that in traveling or going to a place where an official act is to be performed, the manner in which a deputy travels is not a part of the official act.
The McVea opinion indicates that the exception would have been overruled had the petitioner alleged that the wrong had been done while in the actual performance of an official act, provided the wrong arose out of and was directly connected with the official act and resulted from the manner in which such official act was performed.
In the case of Bolton v. Sevario et al., La. App.,25 So.2d 115, the sheriff and his surety were sued for the damages caused by an alleged wrongful assault by a deputy sheriff on a fellow patron at a night club. The Court noted that the petitioner did not allege that the deputy was attempting to arrest the plaintiff, but, on the contrary, alleged that plaintiff was struck from behind by the deputy without warning and was shot without knowing who was his assailant. This case is different from the one before us in that the exception of the sheriff and his bondsman was sustained because of the failure of the petition as a whole to set forth that the deputy, at the time he inflicted the injury, was on duty as a deputy and engaged in the performance of an official act.
In the case of Sanders v. Humphries et al., 143 La. 43, 78 So. 168, 169, the Supreme Court sustained the dismissal of a suit against the sheriff and the surety on his official bond for damages resulting from the reckless assault and shooting by a deputy sheriff. There the Court noted that the petition included the allegation that the assault and shooting by the deputy "were done maliciously," noting that the allegation that the reckless assault occurred while the deputy was on duty and acting as the deputy sheriff is not the same as to say "that the acts were done in violation or in an unfaithful or improper performance of an official act."
The present case is distinguishable from the Sanders case in that nowhere in the petition before us is it alleged that the act of the deputy sheriff complained of was malicious or done with any other purpose than the stopping of the deceased for the purpose of making the proposed lawful search.
The case of Rhodes v. Jordan, Sheriff, et al., La. App., 157 So. 811, was a suit against the sheriff and the company carrying public liability insurance on the automobile in which the deputy was traveling. The case was decided on the point that the bond was issued to cover liability on the car driven by the deputy sheriff and the Court in holding the company liable did not necessarily set a precedent upon which to hold the surety liable for alleged negligence in the performance of official acts by a deputy.
The case of Gray v. De Bretton et al., La. App., 184 So. 390, 394, was another automobile case. No automobile insurance policy was involved. The Court held that the sheriff and the surety on his official bond were not liable for injuries to pedestrians struck by the sheriff's automobile as a result of his deputy's negligent operation thereof while conveying a prisoner to jail. The Court observed that the deputy sheriff, even though engaged in carrying a prisoner to jail, owed to pedestrians using the highway the same duty he would have owed them had he been driving the car for his own personal business or for his own pleasure, making the distinction that as between him and the prisoner whom he had in charge, the deputy was performing an official act, but as between him and pedestrians on the highway, he was negligently driving a car the same as any other motorist might negligently drive and cause injury. The Court made the further distinction between the acts of the deputy toward a prisoner and toward the public by stating:
"If the situation had been that the deputy was walking along the street with his prisoner in charge, and for some reason personal to the deputy, he had struck a bystander with his hand or pistol, it could *Page 284 
not be said that such an unlawful act on his part was done in the discharge of an official act. But, on the contrary, had he struck the prisoner, when there was no need for it, obviously his conduct in so doing would have been the violation of an official duty, a misfeasance for which the sheriff and his surety would have been liable."
[1] A statement of the general rule of liability in such cases as the one before us is found in the syllabus to the opinion of Chief Justice O'Niell in the case of Sanders v. Humphries et al., 143 La. 43, 78 So. 168:
"A sheriff is not liable, nor is the surety on his official bond liable, in damages for personal injuries to a citizen, inflicted recklessly by a deputy sheriff, unless it was done inviolation of an official duty or in an unfaithful or improperperformance of an official act." (Italics ours.)
[2, 3] In the case before us, the petition — all allegations of which must be accepted as true for the purpose of this exception — sets forth that Britt's death occurred as a result of the deputy's exercise of bad judgment in the execution of his alleged purpose to stop Britt's vehicle and search same for unlawfully possessed intoxicating liquors. If the allegations of the above quoted paragraphs are accepted as true, it is logical to conclude that Britt's death occurred through a gross violation of common sense rules of law enforcement and therefore came as the result of "an improper performance of an official act." Under these circumstances, the sheriff and his surety are responsible.
The judgment appealed from is reversed and the case is remanded to the District Court for further proceedings in accordance with law. Costs of appeal to be paid by appellees. Other costs to await the final outcome of the case. *Page 413