# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| STATE OF WASHINGTON, | No.  50400-6-II |
|---|---|
| Respondent, | |
| v. | |
| FORREST EUGENE AMOS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Forrest Amos appeals his convictions and sentence for four counts of forgery and four counts of first degree criminal impersonation.  Amos argues (1) insufficient evidence supports his forgery convictions,[1] (2) he was unconstitutionally physically restrained during the trial, (3) he received ineffective assistance from his counsel regarding pretrial matters, (4) the trial court erred by allowing him to waive counsel and denying his motion to continue the trial, and (5) the trial court improperly imposed an exceptional sentence.  Amos also raises a number of issues in a Statement of Additional Grounds (SAG) for Review.

We hold that (1) sufficient evidence supports Amos's forgery convictions, (2) Amos's physical restraint was harmless, (3) Amos did not receive ineffective assistance of counsel, (4) the trial court did not err by allowing Amos to waive counsel or by denying his motion to

---

[1] Amos's brief also states that insufficient evidence supports his criminal impersonation convictions.  But other than quoting the statute for criminal impersonation, Amos makes no argument regarding these convictions.  We do not consider an issue that has not been briefed. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); RAP 10.3(a).

continue trial, and (5) Amos's sentence was properly imposed.  Additionally, we hold that Amos

does not raise reversible issues in his SAG.  Accordingly, we affirm.

FACTS

This case arises out of Amos's attempt to file documents with the Lewis County Superior

Court regarding the Lewis County prosecutor, a Lewis County deputy prosecutor, and two City

of Centralia police detectives.  As a result of Amos filing these documents, the State charged

Amos with four counts of forgery and four counts of first degree criminal impersonation.

Amos was involved in a 2013 criminal case, a civil case, and this current criminal case.

Events from the first two cases led to the charges in this case.

A.      *Amos's 2013 Criminal Case*

In 2013, Amos was arrested and charged with multiple crimes.  William Halstead was the

deputy prosecutor assigned to this case, and Jonathan Meyer was the elected Lewis County

prosecutor at the time.  The trial court set Amos's bail at $1 million.  Amos could not post bail,

so he remained in Lewis County jail pending the proceeding.  While Amos was awaiting trial,

Centralia Police detectives executed a search warrant on Amos's jail cell.  Detective Adam

Haggerty and Detective Chad Withrow executed this warrant.  According to Amos, the

detectives took documents related to his defense that he was keeping in his cell.  Amos entered a

guilty plea, later claiming that he had no other options without his legal documents.[2]

---

[2] Amos pleaded guilty to tampering with a witness, first degree computer trespass, possession of marijuana with intent to manufacture or deliver, attempted forgery, three counts of possession of a controlled substance with intent to manufacture or deliver, four counts of delivery of a controlled substance, third degree introducing contraband, and second degree attempted theft.

B.      *Amos's Civil Case Filings That Led to this Criminal Case*

Amos filed a civil lawsuit against Halstead, Meyer, Detective Haggerty, and Detective Withrow claiming that his civil rights had been violated and that he was entitled to damages. Amos then filed several handwritten documents with the Lewis County Superior Court under the 2013 criminal case number.  He filed four sets of documents relating to four different individuals: Halstead, Meyer, Detective Haggerty, and Detective Withrow.  Each set is identical, except for the identity and profession of the individual.

For example, the set of documents relating to Halstead contained three pages.  The first page is titled "Forced Commercial Contract" and "Notice of Subrogation Bond in the Nature of RCW 7.44.040;[3] 42.08.020; 42.08.080;[4] 42.20.100.[5]"  Ex. 2.  The body of the page states:

> William Halstead, public servant, prosecuting attorney, law merchant *do hereby enter myself security for costs in the cause, and acknowledge myself bound to pay or cause to be paid all costs which may accure* [sic] *in this action*, either to the opposite party, or to any of the officers of this Court, pursuant to the laws of this State, and/or the District of Columbia, 28 USC Sec. 3002(15)(c). See State v. Sefrit, 82 Wash. 520, 144 P. 725 (1914); State v. Yelle, 4 Wn.2d 327, 103 P.2d 372 (1940); Nelson v. Bartell, 4 Wn.2d 174, 103 P.2d 30 (1940).
>
> Dated this 11ᵗʰ day of March, 2016.  William Halstead
>                                     public servant, prosecuting attorney.

Ex. 2.  (Emphasis added.)

---

[3] RCW 7.44.040 describes conditions under which a person may apply for a ne exeat writ. Ne exeat is an equitable writ ordering the person to whom it is addressed not to leave the jurisdiction of the court or the state.  BLACK'S LAW DICTIONARY 1243 (11th ed. 2019).

[4] RCW 42.08.020 and RCW 42.08.080 describe who may maintain an action on a public officer's official bond.

[5] RCW 42.20.100 states that a public officer's willful neglect to perform their duty is a misdemeanor.

The second page is titled "Justification of Surety Subrogation." Ex. 2. It states that

Halstead personally appeared

> before me, Forrest Eugene Amos, surety on the bond of William Halstead, public servant, prosecuting attorney, law merchant of the County of Lewis and Washington State who, being duly sworn, deposes and says that he is seized of his right mind, and that over and above all of his just debts and liabilities, in property not exempt by law from levy and sale under execution, of a clear unencumbered estate of the value in excess of one million $1,000,000 Dollars . . . .

Ex. 2. Amos signed the page. The page also bears a notary's seal regarding Amos's signature.

The third page is titled "Bond for Costs" and states "Subrogation Security for One Million Dollars, filed and approved the 11th day of March, 2016." Ex. 2. Amos signed this page and the page also bears a notary's seal.

The State charged Amos with four counts of forgery and four counts of first degree criminal impersonation.

C.      *Pretrial Proceedings*

The trial court appointed counsel for Amos. In November 2016, Amos wrote the trial court a letter requesting new appointed counsel because his current counsel was not bringing the pretrial motions Amos thought were necessary. Amos also submitted a motion to proceed pro se. At a hearing on November 23, Amos argued that he either wanted different counsel or would represent himself based on a lack of communication with his current counsel. The trial court allowed a recess for counsel and Amos to communicate, and Amos decided to remain represented by his current counsel. Following this hearing, Amos's trial counsel filed a *Knapstad* [6] motion to dismiss.

---

[6] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

On November 29, the trial court denied Amos's *Knapstad* motion to dismiss. Amos personally then moved for a continuance because he and counsel had not adequately discussed witnesses and trial strategy. The State told the trial court that the witnesses had been interviewed by Amos's counsel. Counsel replied, "I have talked to all of them but one—actually, two. I haven't talked to the gentleman that certified the documents, but I don't believe that's an issue." Verbatim Report of Proceedings (VRP) (Nov. 29, 2016) at 43. The trial court granted the continuance and stated, "And I'm specifically ordering [trial counsel] to make however many trips between here and Clallam Bay Corrections Facility as is necessary to properly prepare the defense in this case." VRP (Nov. 29, 2016) at 54.

At a hearing on June 1, 2017, Amos again asked to represent himself because he and trial counsel were not communicating well, trial counsel had not visited him in person, and he and trial counsel did not agree on trial strategy. Counsel responded that he and Amos had an hour-long telephone meeting to discuss issues in the case. As a result of that meeting, trial counsel brought a second *Knapstad* motion regarding legal efficacy of the documents. Counsel acknowledged that Amos wanted counsel to make certain arguments, but counsel stated he could not properly present all of Amos's arguments.

Amos stated that he wanted to represent himself because he had his own arguments and strategies for trial that he did not think counsel would adequately present. The trial court asked Amos if he wanted his counsel to remain as standby counsel, but Amos said, "I don't feel comfortable with [trial counsel] being that guy if you're going to appoint standby counsel." VRP (June 1, 2017) at 46-47. The trial court informed Amos of the risks and hazards of self-

representation. The trial court then granted Amos's request to represent himself without standby counsel.

On June 7, 2017, the trial court and parties addressed a number of issues before trial started. These issues included Amos's motion for a continuance, Amos's request to interview witnesses, Amos's leg restraint, and the State's motions in limine.

Amos's motion for a continuance claimed that he needed additional time to interview witnesses and make pretrial motions. Amos's affidavit accompanying the motion further stated that he needed more time for discovery issues and to prepare his defense. The trial court stated that the only discovery in this case was a police report and the documents written by Amos. Amos stated that his trial counsel had not provided him any witness list or interviews. When the trial court asked which potential witnesses Amos wanted to interview, Amos stated the four complaining witnesses—Halstead, Meyer, Detective Haggerty, and Detective Withrow—and the bondholders or sureties. The State responded, "As far as the witnesses, my understanding is they have been interviewed. In talking with them they've had discussions with defense counsel I know." VRP (June 7, 2017) at 19. Nonetheless, the State suggested that, because the complaining witnesses were present for trial, Amos could take time before the trial began to interview them. The trial court gave Amos an opportunity to interview witnesses, and Amos interviewed these witnesses. The trial court denied Amos's motion for a continuance.

Amos also raised the issue of his leg restraint. The following exchange occurred:

MR. AMOS: One quick question, your Honor, before we take a recess. Is there a possibility that I can object to this leg brace being on my leg since I've got to get up and like talk to a jury and stuff? It's kind of awkward.

THE COURT: No. That's got to stay on. That's jail policy. I'm not going to direct that, because you just need to—you've got to work with it.

6

MR. AMOS: Right here in our jury box it's like looking directly at this side of me. I understand I've got to work with it, but I think it's still prejudicial. I've never had any kind of eludes or any kind of attempts to do anything. We have an officer right here. I mean, that's not—I'm just kind of—

THE COURT: I understand that but—

MR. AMOS: I'm just concerned about the prejudicial effect of this.

THE COURT: Well, I will tell you I didn't notice that you had anything on until you said that. And I—that is minimally intrusive. You know, it's not something they can see. The only thing that is going to happen is you are going to reach down to your knee and hit the release when you sit down, and that's the only thing that's going to happen. So that has to stay on.

MR. AMOS: All right.

THE COURT: All right. I don't think that it's going to be an issue for here, but there is—we have had other people who have tried to bolt, and it's just—it's a security—it's a safety thing, and it's just something that we need to deal with it [sic].

MR. AMOS: All right.

[THE STATE]: If I could just make a record, your Honor, it appears that there is no exterior discernible protruding item that at all shows through the clothing of the defendant, at least not from this view, and I don't see anything either. So for the record—

MR. AMOS: You [sic] looking at the wrong leg just for the record.

THE COURT: Well, but there's nothing—it's all contained. It's underneath your pant leg, correct?

MR. AMOS: Yes.

THE COURT: Okay. All right. We will take a recess.

VRP (June 7, 2017) at 51-52.

Additionally, the trial court granted the State's motion in limine to exclude evidence regarding the bond process. The State also moved to exclude evidence regarding legal efficacy

of the documents, arguing that legal efficacy was not an issue for the jury to decide. Rather, the State argued that legal efficacy was a matter of law already decided by the trial court with the *Knapstad* motions. The trial court granted this motion.

D.      *Trial Proceedings*

At trial, the complaining witnesses all testified that they did not file the documents at issue, nor did they give Amos permission to file them. The documents were admitted as exhibits. Meyer testified that the documents were filed under the criminal case number, "well after the case was completed." 2 VRP at 143. He testified that based on the language of the documents, he would be liable for the costs that were imposed in Amos's 2013 criminal case. Meyer testified that the same would be true for the three other complaining witnesses' documents. Costs and fees in Amos's 2013 criminal case amounted to approximately $18,000.

When discussing the jury instructions, Amos argued that the definition of written instrument needed to include that the instrument, if genuine, had legal effect. The trial court and the State agreed, and the court instructed the jury on the definition of written instrument.[7] Based on the new instruction, the State recalled Meyer. Meyer testified that based on the language of the document, he would be liable for the costs that were actually imposed in the 2013 case. Meyer testified that the same would be true for the three other complaining witnesses' documents. Amos had the opportunity to cross examine Meyer. Meyer testified that, to his knowledge, a sheriff had not levied or executed on his bond.

---

[7] Jury instruction 10 stated, "'Written instrument' means any paper, document or other instrument containing written or printed matter which, if genuine, may have legal effect or be the foundation of legal liability." CP at 135.

Amos then testified. He testified that he was not trying to defraud the complaining witnesses. He testified that he wrote the documents and submitted them to be filed with the Lewis County Superior Court. Amos explained:

> . . . [T]hey appeared before me when they arrested me and said, Mr. Amos, you're going to be held in jail until you answer our criminal complaint and you're going to be held in jail on $1 million bail unless you can post that. So I gave up my freedom because I could not post that money and the freedom is the equity that I'm claiming damages against, my freedom of sitting in the jail to answer the complaint. And before the complaint could be answered everything was taken from me so I couldn't effectively answer that. I couldn't have effective assistance of counsel. I couldn't have nothing. That's why I sued them. That's why I've been fighting, to try to hold these guys accountable.
>
>     . . . .
>
> . . . I think the law allowed me to do it. I think I read the law right. And I filed these papers after initiating a lawsuit against them to try to attach their bond that they put up on the $1 million they were holding me in jail for. That's what I understood this to be, to try and get damages if I was to succeed in my lawsuits against them for deprivation of my constitutional rights.

3 VRP at 302-03.

Amos agreed that he had assumed the identities of the four complaining witnesses and that he created the documents. But, Amos testified, "That contract allows me to, when I believe I'm damaged, to take subrogated rights as an injured party against their liabilities and actually move against their surety and their liability policy. And that's all I intended to do in that because I filed a claim." 3 VRP at 313. Amos testified that his intent was "subrogation, to act in the shoes of another person to assert my rights against their sureties and their bonds because I believed I was damaged." 3 VRP at 301.

Throughout the trial, Amos moved around the courtroom in front of the jury. Amos handed documents to witnesses and approached the bench. When Amos was presenting his

defense, the trial court directed Amos to "come on up" to testify in the presence of the jury.  3 VRP at 296.  Other than Amos's motion, there is no further mention of the leg restraint.  And nothing in the record on appeal shows or suggests that the jury noticed Amos's leg restraint.

The jury found Amos guilty of four counts of forgery and four counts of first degree criminal impersonation.

E.      *Sentencing*

At sentencing, the trial court found that the forgery and criminal impersonation convictions were the same criminal conduct.  Amos agreed his offender score was 21.  Amos's standard range for each forgery count was 22 to 29 months.  The State requested an exceptional sentence of 116 months, 29 months for each forgery conviction to run consecutively.  Amos requested a sentence within the standard range.  The trial court adopted the State's recommendation and imposed 29 months for each forgery conviction to run consecutively, totaling 116 months based on RCW 9.94A.535(2)(c).  The trial court's finding regarding sentencing stated, "The exceptional sentence is justified by the following aggravating circumstances: (a) Multiple Current Offenses RCW 9.94A.535(2)(c)."  CP at 165.

Amos appeals his convictions and sentence.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Amos argues that his convictions are not supported by sufficient evidence.  Specifically, Amos argues that the State failed to prove his intent to injure or defraud and the legal efficacy of the documents.  We disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Such inferences must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014). Circumstantial evidence is not any less reliable or probative than direct evidence in reviewing the sufficiency of the evidence supporting a jury verdict. *Kintz*, 169 Wn.2d at 551.

RCW 9A.60.020(1) provides:

A person is guilty of forgery if, with intent to injure or defraud:
    (a) He or she falsely makes, completes, or alters a written instrument or;
    (b) He or she possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged.

A.    *Sufficient Evidence Supports Amos's Intent To Injure or Defraud*

Amos argues that there was insufficient evidence of his intent to injure or defraud. We disagree.

When an intent to defraud is an element of an offense, "it shall be sufficient if an intent appears to defraud any person." RCW 10.58.040. Intent to commit a crime may be inferred if the defendant's conduct and surrounding circumstances plainly show such an intent as a matter of logical probability. *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). Regarding

11

forgery, a defendant must demonstrate an intent to pass off their forged documents as authentic. *Vasquez*, 178 Wn.2d at 12.

Amos testified that he handwrote the documents and submitted them to be filed with the Lewis County Superior Court. Amos agreed that he assumed the identities of the four complaining witnesses when he wrote the documents. But, Amos testified, "That contract allows me to, when I believe I'm damaged, to take subrogated rights as an injured party against their liabilities and actually move against their surety and their liability policy. And that's all I intended to do in that because I filed a claim." 3 VRP at 313. Amos testified that his intent was "subrogation, to act in the shoes of another person to assert my rights against their sureties and their bonds because I believed I was damaged." 3 VRP at 301.

On appeal, Amos relies only on his own testimony to explain his actions. But we defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Andy*, 182 Wn.2d 303. Taking the evidence in a light most favorable to the State, a reasonable jury could find that Amos had the intent to injure or defraud. Amos admitted to creating these documents and writing the names of the four complaining witnesses. The documents are written in the first person, using language like "hereby enter myself security for costs in the cause, and acknowledge myself bound to pay or cause to be paid all costs." Ex. 2. Each individual's name then appears at the bottom of the document, following a date. Moreover, Amos filed these documents with Lewis County Superior Court. As a matter of logical probability, an intent to defraud could be inferred. A reasonable jury could find that Amos possessed an intent to injure or defraud when he created and filed these documents, assumed the complaining witnesses' identities, and purported to make each individual liable for costs and fees

in his criminal case. We hold that the State presented sufficient evidence of Amos's intent to injure or defraud.

B.    *Sufficient Evidence Supports the Legal Efficacy of the Documents*

Amos also argues that the State failed to provide sufficient evidence that the documents constituted written instruments with legal efficacy. We disagree.

To prove Amos committed forgery, the State bore the burden of proving that Amos possessed, uttered, offered, disposed of, or put off as true a written instrument. RCW 9A.60.020(b). In the crime of forgery, a "written instrument" is

> (a) Any paper, document, or other instrument containing written or printed matter or its equivalent; or (b) any access device, token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege, or identification.

RCW 9A.60.010(7). This statutory definition contains a common law requirement that the instrument have "legal efficacy," or "'is something which, if genuine, may have legal effect or be the foundation of legal liability.'" *State v. Scoby*, 117 Wn.2d 55, 57-58, 810 P.2d 1358 (quoting *State v. Scoby*, 57 Wn. App. 809, 811, 790 P.2d 226 (1990)), *amended on recons.*, 815 P.2d 1362 (1991). "[A] written instrument can support a charge of forgery when it is incomplete, but not when it is so incomplete that it would lack legal efficacy even if genuine." *State v. Smith*, 72 Wn. App. 237, 243, 864 P.2d 406 (1993).

Certain public officials, including prosecuting attorneys, must post an official bond while in office. RCW 36.16.050(6); *see also generally* chapter 42.08 RCW. The purpose of an official bond is "to provide indemnity against malfeasance, nonfeasance and misfeasance in public office." *Nelson*, 4 Wn.2d at 182 (quoting *Gray v. De Bretton*, 192 La. 628, 639, 188 So. 722 (1939)); RCW 42.08.010-.020. In dicta, our Supreme Court mentioned that an unlawful search

13

can create liability on the bond. *See Greenius v. Amer. Sur. Co.*, 92 Wn. 401, 407, 159 P. 384 (1916). When a public official is performing an official act, commits misconduct, and injures a person, certain classes of injured persons can "resort to the bond" to recover damages. RCW 42.08.020, .070-.080; *Nelson*, 4 Wn.2d at 178. When a public official is liable on their bond, the surety on the bond is liable as well. RCW 42.08.070. A plaintiff's recovery against the surety is limited to amount of the bond. RCW 42.08.050.

A written contract is not necessary to create a principal-surety relationship. *Fluke Capital & Mmgt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 620-21, 724 P.2d 356 (1986). "A personal suretyship is a consensual and contractual relationship that requires mutual assent." *Fluke*, 106 Wn.2d at 621. "Where a person agrees to be answerable for the debt of another, a 'personal' suretyship is created." *Honey v. Davis*, 131 Wn.2d 212, 218 n.5, 930 P.2d 908 (1997).

Here, Amos filed a number of documents with the Lewis County Superior Court. For each complaining witness, the documents stated that the witness did "hereby enter myself security for costs in the cause, and acknowledge myself bound to pay or cause to be paid all costs." Ex. 2. Although Amos focuses on the fact that his testimony showed that he "did not know what he was doing," and that the documents as a whole could not have created legal liability in the manner Amos intended, Br. of Appellant at 11, we need look no further than the Notice of Subrogation Bond documents which clearly state that each complaining witness agrees to be answerable for the debt of another. Each document contains a complaining witness's name hand-printed on the signature line. These documents, if genuine, would have legal effect or be the foundation of legal liability.

Moreover, Meyer testified that based on the language of the document, he would be liable for the costs that were actually imposed in the 2013 case. Meyer testified that the same would be true for the three other complaining witnesses' documents. Amos argues that these documents were merely notices to the complaining witnesses. However, if genuine, these "notices" would legally bind the complaining witnesses. We hold that the State presented sufficient evidence of the legal efficacy to support Amos's convictions of forgery.[8]

## II. LEG RESTRAINT

Amos argues that the trial court abused its discretion by requiring Amos to wear a leg restraint. The State concedes that the trial court abused its discretion, but argues that the error was harmless. We agree with the State.

The presumption of innocence is a fundamental component of a fair trial. *State v. Jaime*, 168 Wn.2d 857, 861, 233 P.3d 554 (2010). To preserve the presumption of innocence, a defendant is "'entitled to the physical indicia of innocence which includes the right of the defendant to be brought before the court with the appearance, dignity, and self-respect of a free and innocent [person.]'" *Jaime*, 168 Wn.2d at 861-62 (quoting *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999)).

At the same time, a trial court has a duty to provide for courtroom security, and may exercise its discretion to implement measures needed to protect the safety of court officers,

---

[8] Amos also argues in passing that legal efficacy is a question that should have gone to the jury. But, this question did go to the jury. Jury instruction 10 states, "'Written instrument' means any paper, document or other instrument containing written or printed matter which, if genuine, may have legal effect or be the foundation of legal liability." CP at 135. This is the definition of legal efficacy. *Scoby*, 117 Wn.2d at 57-58. Amos's argument fails.

parties, and the public. *State v. Hartzog*, 96 Wn.2d 383, 396, 635 P.2d 694 (1981). In exercising discretion, the trial court must bear in mind a defendant's right "to be brought into the presence of the court free from restraints." *State v. Damon*, 144 Wn.2d 686, 690, 25 P.3d 418 (2001). "[R]egardless of the nature of the court proceeding or whether a jury is present, it is particularly within the province of the trial court to determine whether, and in what manner, shackles or other restraints should be used." *State v. Walker*, 185 Wn. App. 790, 797, 344 P.3d 227 (2015).

Courts recognize that physical restraints are inherently prejudicial to the defendant. *Finch*, 137 Wn.2d at 845-46. Restraints should be allowed "only after conducting a hearing and entering findings into the record that are sufficient to justify their use on a particular defendant." *Walker*, 185 Wn. App. at 800. The trial court's determination must be based on specific facts in the record that relate to the particular defendant. *Jaime*, 168 Wn.2d at 866.

We review a trial court's decision to keep a defendant restrained for abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001). A trial court's failure to exercise its discretion when considering a courtroom security measure constitutes constitutional error. *State v. Lundstrom*, 6 Wn. App. 2d 388, 394, 429 P.3d 1116 (2018), *review denied*, 193 Wn.2d 1007 (2019). Deferring to general jail policy is an abuse of discretion and constitutional error. *Lundstrom*, 6 Wn. App. 2d at 395.

A claim for unconstitutional physical restraint is subject to a harmless error analysis. *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). If an error violates a defendant's constitutional right, it is presumed to be prejudicial. *Finch*, 137 Wn.2d at 859. But the State may overcome this presumption by showing that the error was harmless beyond a reasonable doubt. *Finch*, 137 Wn.2d at 859. For the unconstitutional restraints to be reversible,

rather than harmless error, the record on appeal must show that the restraints "had a substantial or injurious effect or influence on the jury's verdict." *Hutchinson*, 135 Wn.2d at 888.

Here, the trial court abused its discretion because it failed to conduct an adequate hearing or enter findings sufficient to justify Amos's leg restraint. Amos objected the leg restraint arguing that it was prejudicial and that he had never attempted to escape. The trial court cited jail policy as justification for the restraint. The trial court stated it had not noticed the leg restraint and that it was minimally intrusive because the leg restraint was contained underneath Amos's pant leg. The trial court failed to enter any findings about the leg restraint and merely deferred to jail policy as the justification for the restraint. We hold that the trial court abused its discretion.

Despite the trial court abusing its discretion, the record on appeal must show that the restraints "had a substantial or injurious effect or influence on the jury's verdict." *Hutchinson*, 135 Wn.2d at 888. During the initial colloquy about the leg restraint, Amos stated that he would be getting up to speak and the leg restraint was "kind of awkward." VRP (June 7, 2017) at 51. The State's counsel also stated that he did not see anything protruding under Amos's pant leg. Throughout the trial, Amos moved around the courtroom in front of the jury. Amos handed documents to witnesses and approached the bench. When Amos was presenting his defense, the trial court directed Amos to "come on up" to testify in the presence of the jury. 3 VRP at 296.

On appeal, Amos states that the leg restraint interfered with his ability to move around while presenting his defense. He argues that the leg restraint encumbered his movements but acknowledges that "[i]t is not clear from the record whether this was the case or not." Br. of Appellant at 15. But there must be evidence of an injurious effect or influence on the jury's

17

verdict in the record on appeal. The record shows that Amos, acting as his own counsel, moved throughout the courtroom in the presence of the jury. Amos's movements were possibly irregular because of the leg restraint. *See, e.g.*, *State v. Jackson*, 10 Wn. App.2d 136, 150, 447 P.3d 633 (2019) (noting that the defendant struggled to walk with a leg restraint). However, nothing in the record on appeal shows that the jury noticed Amos's leg restraint. Because nothing in the record shows that the leg restraint influenced the jury's verdict, we hold that the error was harmless beyond a reasonable doubt.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Amos argues that he received ineffective assistance from his trial counsel because counsel failed to meet with Amos or interview witnesses. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Amos must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422

18

P.3d 489 (2018). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

A.      *Trial Counsel's Communications with Amos Were Not Deficient*

Amos argues, "The failure of defense counsel to meet with a client when specifically ordered by the court should be considered per se ineffective assistance of counsel." Br. of Appellant at 19.[9] We disagree.

An attorney must perform to professional standards, and failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Under the Rules of Professional Conduct, counsel has a duty of communication with the defendant. RPC 1.4. An attorney must "inform the client of any circumstance requiring the client's consent, reasonably consult with the client regarding the means by which the client's objectives will be accomplished, keep the client reasonably informed about the status of the matter, and promptly comply with any requests for information." *In re Disciplinary Proceedings Against Van Camp*, 171 Wn.2d 781, 803, 257 P.3d 599 (2011).

At the June 1 hearing, Amos requested to represent himself because he and trial counsel were not communicating well, trial counsel had not visited him in person, and Amos stated that he and trial counsel did not agree on trial strategy. Counsel responded that he and Amos had an hour-long telephone meeting to discuss issues in the case. As a result of that meeting, trial

---

[9] Amos also argues that counsel's deficient performance "improperly forced Appellant to become pro se against his wishes one week before trial." Br. of Appellant at 19. However, Amos offers no law or argument regarding this issue. We decline to review the issue because Amos's passing reference to the issue is insufficient to merit judicial review. RAP 10.3.

counsel brought a second *Knapstad* motion regarding legal efficacy. Counsel acknowledged that Amos had certain arguments he wanted counsel to make, but counsel stated that he could not properly present all of Amos's arguments.

Amos argues that his trial counsel failed to meet with him in person and did not accept phone calls. It is clear that Amos and his counsel disagreed about strategies and legal arguments regarding this case. This disagreement, however, is not equal to a failure to communicate. Amos relies on the trial court's statement, "And I'm specifically ordering [trial counsel] to make however many trips between here and Clallam Bay Corrections Facility as is necessary to properly prepare the defense in this case." VRP (Nov. 29, 2016) at 54. But, trial counsel was not ordered to go to the corrections facility. Rather, the trial court directed counsel to communicate with Amos as necessary to adequately prepare the defense. Although nothing in the record shows that trial counsel met with Amos in person at the correctional facility, trial counsel communicated with Amos over the telephone and brought a second *Knapstad* motion as a result. Amos and his counsel also corresponded by letter. We strongly presume that trial counsel's performance was not deficient, *Emery*, 174 Wn.2d at 755, and we hold that Amos fails to overcome this presumption regarding trial counsel's communications. Because Amos fails to demonstrate deficient performance, he cannot show ineffective assistance of counsel for failing to communicate. *Classen*, 4 Wn. App. 2d at 535.

B.    *Trial Counsel Was Not Ineffective by Failing To Interview Witnesses*

Amos also argues that trial counsel's performance was deficient because counsel failed to conduct witness interviews. We disagree.

To provide effective assistance, defense counsel must investigate the case, including an investigation of witnesses. *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). Defense counsel's failure to investigate or interview witnesses, or inform the court of witness testimony can support a claim for ineffective assistance of counsel. *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). However, courts may defer to trial counsel's decision against calling a witness if counsel investigated the case and made an informed and reasonable decision against conducting a particular interview or calling a particular witness. *Jones*, 183 Wn.2d at 340.

Here, trial counsel stated he conducted some witness interviews in November. After deciding to represent himself, Amos stated that trial counsel had not provided him any witness list or interviews. When the trial court asked which potential witnesses Amos wanted to interview, Amos stated the four complaining witnesses in this case and the bondholders or sureties. The State responded that it thought the complaining witnesses had been interviewed. Nonetheless, the State suggested that because the witnesses were present for trial, Amos could take time before the trial began to interview them. Amos confirmed before the trial began that he had an opportunity to interview witnesses.

Amos generally argues that his trial counsel failed to interview witnesses, but he does not allege any specific witnesses that counsel failed to interview. Trial counsel conducted some witness interviews. Even assuming without deciding that Amos's trial counsel deficiently performed, Amos fails to show prejudice. Amos was able to conduct witness interviews before trial. Amos cannot show that the outcome of the proceeding would have been different because the trial court allowed Amos time to interview the witnesses before the matter proceeded to trial.

IV. RIGHT OF SELF-REPRESENTATION

Amos argues that because his request for self-representation was untimely, the trial court abused its discretion by granting Amos's waiver of counsel. Within this argument, Amos also appears to argue that the trial court abused its discretion by denying Amos's motion for a continuance after allowing Amos to represent himself. We hold that the trial court did not abuse its discretion.

A.      *Right of Self-Representation*

The Sixth Amendment and article I, section 22 of Washington Constitution guarantee criminal defendants the right of self-representation. *See State v. Curry*, 191 Wn.2d 475, 482, 423 P.3d 179 (2018). "This right is so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). But the right to self-representation is not self-executing or absolute. *Madsen*, 168 Wn.2d at 504. To invoke the right of self-representation, a defendant must timely and unequivocally state a request to proceed without counsel. *State v. Coley*, 180 Wn.2d 543, 560, 326 P.3d 702 (2014). If the request for self-representation is unequivocal and timely, the trial court must then determine whether the request is voluntary, knowing, and intelligent. *Curry*, 191 Wn.2d at 486. The trial court must apply every reasonable presumption against a defendant's waiver of his right to counsel. *Curry*, 191 Wn.2d at 486.

Timeliness of a request for self-representation is determined on a continuum:

> If the demand for self-representation is made (1) well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self[-]representation exists as a matter of law; (2) *as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter*; and (3) during the

trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court.

*Madsen*, 168 Wn.2d at 508 (quoting *State v. Barker*, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)) (emphasis added) (emphasis omitted). Timeliness focuses on the nature of the request itself rather than the motivation or purpose behind the request. *Curry*, 191 Wn.2d at 486-87. Specifically, "if, when, and how the defendant made a request for self-representation." *Curry*, 191 Wn.2d at 486-87.

We review a trial court's ruling on a defendant's request for self-representation for an abuse of discretion. *Curry*, 191 Wn.2d at 483. An abuse of discretion occurs when the ruling is manifestly unreasonable, relies on unsupported facts, or applies an incorrect legal standard. *Curry*, 191 Wn.2d at 483-84. We give great deference to the trial court, which has far more experience in considering requests for self-representation and has the benefit of observing the defendant and the circumstances and context of the request. *Curry*, 191 Wn.2d at 484-85.

Although Amos requested to represent himself more than once before trial, he refers only to his request from June 1, 2017 on appeal. He argues that, because he was proceeding as a self-represented litigant, the trial court's denial of his motion for a continuance was error. In his appellate brief, Amos quotes a large portion of the record discussing Amos's motion for a continuance on June 7. Amos's decision to represent himself occurred on June 1.

To the extent that Amos argues that his motion to represent himself was untimely, we hold that the trial court did not abuse its discretion. Here, Amos made his request on June 1, before his trial that was set for June 7. Because Amos's final motion to self-represent came shortly before trial, the right of self-representation depended on the facts of the case "with a measure of discretion . . . [to] the trial court." *Madsen*, 168 Wn.2d at 508.

23

Amos's case was not factually complicated. The fact that Amos created and filed the documents was never at issue. Amos's defense was that he did not mean to deceive anyone. This defense relied on his testimony, which Amos could have prepared in the time between becoming self-represented and the trial.

Moreover, the trial court and Amos engaged in a lengthy discussion with Amos and his trial counsel. Amos wanted to represent himself because he had his own arguments and strategies for trial that he did not think counsel would adequately present. The trial court informed Amos of the risks and hazards of self-representation. Amos had repeatedly requested to represent himself, suggested several motions his counsel did not feel he could present, had the opportunity to interview the witnesses, and possessed the discovery well before June 1. Accordingly, we hold that the trial court did not abuse its discretion when granting Amos's request to represent himself because it was timely.

B.     *Motion for a Continuance*

Amos also appears to argue that the trial court abused its discretion by denying his motion for a continuance after the court allowed Amos to represent himself. We hold that the trial court did not abuse its discretion.

A trial court possesses the sound discretion to grant or deny a motion for a continuance. *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005). We will not disturb the trial court's decisions absent a clear showing that the trial court's ruling is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. *Flinn*, 154 Wn.2d at 199. There is no mechanical test when granting or denying a continuance, and the trial court may consider many

factors, "including surprise, diligence, redundancy, due process, materiality, and maintenance of ordinary procedure." *State v. Downing*, 151 Wn.2d 265, 273, 87 P.3d 1169 (2004).

Amos moved for a continuance the morning of trial. His motion cited the need for time to interview witnesses and make pretrial motions. His affidavit accompanying the motion further stated Amos needed more time for discovery issues and to prepare his defense. The trial court stated that the discovery in this case was a police report and the documents written by Amos. The trial court gave Amos an opportunity to interview witnesses. The trial court then granted the State's motion in limine to exclude evidence regarding the bond process. As a result, the trial court denied Amos's motion for a continuance.

The trial court resolved the issues raised by Amos in his motion for a continuance. Discovery was manageable, the defense that Amos sought was excluded by the State's motion in limine, and the trial court allowed time for Amos to interview the witnesses before trial. We hold that the trial court did not abuse its discretion when denying Amos's motion for a continuance. The trial court did not abuse its discretion by allowing Amos to move forward without counsel or by denying Amos's motion for a continuance.

V. EXCEPTIONAL SENTENCE

Amos argues that the exceptional sentence was not supported by the record and that the length of his sentence was manifestly unreasonable. We disagree.

An exceptional sentence is a sentence that is either longer or shorter than the standard range sentence for the defendant's crime. RCW 9.94A.535. A sentence above the standard range may be imposed if an aggravating factor is present to justify its imposition. RCW 9.94A.535. The trial court has discretion to impose an exceptional sentence above the standard

range if the aggravating factor present in a defendant's case is one that is enumerated in RCW 9.94A.535(2). Relevant here, RCW 9.94A.535(2)(c) allows a sentencing court to impose an exceptional sentence when the "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." Imposing consecutive sentences is an exceptional sentence. RCW 9.94A.535.

A defendant's offender score is calculated based on current and prior convictions. RCW 9.94A.525(1). The standard sentencing ranges in the Sentencing Reform Act of 1981, chapter 9.94A RCW, do not account for offender scores in excess of nine. RCW 9.94A.510; *State v. France*, 176 Wn. App. 463, 468, 308 P.3d 812 (2013). Therefore, "[w]here a defendant has multiple current offenses that result in an offender score greater than nine, further increases in the offender score do not increase the standard sentence range." *France*, 176 Wn. App. at 468.

To reverse an exceptional sentence, we must determine: (1) under a clearly erroneous standard, that there is insufficient evidence in the record to support an exceptional sentence; (2) under a de novo standard, that the reasons supplied by the trial court do not justify an exceptional sentence; or (3) under an abuse of discretion standard, that the sentence is excessive or too lenient. *State v. Alvarado*, 164 Wn.2d 556, 560-61, 192 P.3d 345 (2008). A sentence is clearly excessive if it is based on untenable grounds or reasons, or its length shocks the conscience in light of the record. *State v. Knutz*, 161 Wn. App. 395, 410-11, 253 P.3d 437 (2011).

Here, the jury found Amos guilty of four counts of forgery and four counts of criminal impersonation. At sentencing, the trial court found that the forgery and criminal impersonation convictions were the same criminal conduct. Amos agreed his offender score was 21. The State requested an exceptional sentence of 116 months, 29 months for each forgery conviction to run

consecutively. Amos requested a sentence within the standard range. The trial court imposed 29 months for each forgery conviction to run consecutively, totaling 116 months based on RCW 9.94A.535(2)(c). The trial court's finding regarding sentencing stated, "The exceptional sentence is justified by the following aggravating circumstances: (a) Multiple Current Offenses RCW 9.94A.535(2)(c)[.]" CP at 165.

Amos presents two arguments regarding his sentence. First, Amos argues that his sentence is not supported by the record. We review whether insufficient evidence supports the sentence under a clearly erroneous standard. *Alvarado*, 164 Wn.2d at 560-61. Amos had a high offender score and was found guilty of four counts of forgery in this proceeding. As a result, some of Amos's current offenses would go unpunished because once his offender score was above nine, the standard ranges for the crimes did not increase. Based on this, the trial court imposed an exceptional sentence. We hold that it was not clearly erroneous for the trial court to sentence Amos to an exceptional sentence, and Amos's sentence was supported by sufficient evidence in the record.

Second, Amos argues that his sentence is excessive and manifestly unreasonable. We review whether a sentence is excessive under an abuse of discretion standard. *Alvarado*, 164 Wn.2d at 560-61. Amos had a high offender score and, without imposing concurrent sentences under RCW 9.94A.535(2)(c), some of Amos's criminal conduct would have gone unpunished. The trial court's sentence was not based on untenable grounds or reasons. Further, in light of the record, the length of Amos's sentence does not shock the conscience. Each forgery conviction involved a different victim, Amos committed these crimes while imprisoned, and Amos's

criminal history would have prevented current offenses from being punished. We hold that the trial court did not err when it imposed an exceptional sentence.

## VI. STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Amos argues that (1) the trial court erred by denying his right to be charged and tried in the proper venue, (2) the charging information provided inadequate notice, (3) the trial court erred by denying his *Knapstad* motion to dismiss, (4) his right to present a defense was violated by the trial court's evidentiary rulings, (5) the trial court erred by denying his discovery requests, (6) the trial court erred by declining to instruct the jury regarding subrogation, (7) Meyer conducted a vindictive prosecution, (8) the trial court erred by denying his requests for lesser included jury instructions, and (9) the trial court erred by imposing an exceptional sentence. We hold that Amos does not raise any reversible issues in his SAG.

A.    *Additional Facts*

In pretrial proceedings, Amos sought discovery of public official bonds, oaths of office, and liability insurance policies arguing they would be "helpful" to his case. VRP (Oct. 26, 2016) at 7. Because Amos failed to show materiality, the trial court denied his discovery request.

Immediately before trial, the State moved to amend the information. Before the State's motion, the information stated that Amos's actions occurred in Lewis County. The State's motion to amend would have stated that Amos's actions occurred in either Lewis or Grays Harbor counties. The State argued that while Amos indeed put off as true these written instruments in Lewis County when he filed them, the State wanted the information to more accurately reflect that Amos wrote the documents in Grays Harbor County. Amos objected to the amendment and "to the fact that I don't think they have venue if they're alleging that I forged

28

the document and that occurred in a county other than this. I don't think Lewis County is the proper venue at this point." 1 VRP at 72. The trial court denied the State's motion to amend because an element of the crimes occurred in Lewis County.

Before trial, the State also moved to exclude evidence of the complaining witnesses' personal finances, the Centralia Police Department bond, and the complaining witnesses' oaths of office. The trial court ruled that this evidence was not relevant to whether Amos submitted the documents or whether the documents were falsely made. The trial court stated that Amos was allowed to explain why he did what he did, but that these pieces of evidence were not relevant for that.

Amos also requested lesser included offense instructions for forgery and first degree criminal impersonation. Regarding forgery, the trial court found that either the crime was committed or it was not committed. The trial court stated that there was no evidence to support attempted forgery because Amos testified that he completed and filed the documents. The trial court denied Amos's request. Regarding criminal impersonation, the trial court ruled that the facts did not support an instruction for second degree criminal impersonation and denied Amos's request.

The trial court did not provide the jury with a definition of subrogation. Subrogation was used in the jury instructions only as a proper noun to describe the "Notice of Subrogation Bond." CP at 127. During deliberations the jury asked for the definition of subrogation. The trial court proposed responding that the jury had the court's instructions and that the jury should continue deliberating. Amos agreed and stated that he had testified regarding his idea of subrogation. The trial court declined to offer supplemental instructions.

B.      *Venue*

Amos argues that the trial court abused its discretion by denying his right to be charged and tried in Grays Harbor County.  We disagree.

Article I, section 22 of the Washington Constitution provides that "[i]n criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed."

Additionally, CrR 5.1 governs the proper venue for the commencement of criminal actions.  CrR 5.1(a) provides that an action shall be commenced either "(1) In the county where the offense was committed;" or "(2) In any county wherein an element of the offense was committed or occurred."  CrR 5.1(b) states, "When there is reasonable doubt whether an offense has been committed in one of two or more counties, an action may be commenced in any such county."  Further, CrR 5.1(c) provides that if a case is filed under section (b) and reasonable doubt exists about where the offense occurred, the defendant "shall have the right to change venue to any other county in which the offense may have been committed."  Importantly, "[a]ny objection to venue must be made as soon after the initial pleading is filed as the defendant has knowledge upon which to make it."  CrR 5.1(c).

A defendant's failure to timely raise venue may constitute a waiver.  *State v. Dent*, 123 Wn.2d 467, 479, 869 P.2d 392 (1994).  The right of a defendant to challenge venue is strictly time limited.  *Dent*, 123 Wn.2d at 480.  Under CrR 5.1(c), any objection to venue must be made as soon after the initial pleading is filed as the defendant has knowledge upon which to make it.  *See Dent*, 123 Wn2d at 480.  Where CrR 5.1 does not apply, the defendant is required to raise the venue question at the omnibus hearing.  *Dent*, 123 Wn.2d at 480.  Unless the defendant makes a

showing of good cause for not raising the issue at the omnibus hearing, failure to do so constitutes a waiver.

Proper venue is not an element of the crime. *State v. Rockl*, 130 Wn. App. 293, 297, 122 P.3d 759 (2005). A decision denying a change of venue will be disturbed only for an abuse of discretion. *Rockl*, 130 Wn. App. at 297.

Here, the issue of venue arose when the State moved to amend the information immediately before trial. Before the State's motion, the information stated that Amos's actions occurred in Lewis County. The State's motion to amend would have stated that Amos's actions occurred in either Lewis or Grays Harbor counties. The State argued that although Amos put off as true these written instruments in Lewis County, the State wanted the information to more accurately reflect that Amos wrote the documents in Grays Harbor County. Amos objected to the amendment and "to the fact that I don't think they have venue if they're alleging that I forged the document and that occurred in a county other than this. I don't think Lewis County is the proper venue at this point." 1 VRP at 72. The trial court denied the State's motion to amend because an element of the crimes occurred in Lewis County.

We hold that Amos waived his right to change venue. Amos's right to change venue was strictly time limited. Amos needed to object to venue soon after the initial pleadings because he had knowledge to object to venue. The Second Amended Information which the State attempted to amend was filed on November 29, 2016. Amos clearly knew he wrote the documents in Grays Harbor County. Amos did not object to venue until immediately before trial on June 7, 2017. Because Amos did not timely object to venue, we hold that Amos waived his objection.

C.      *Adequate Information*

Amos argues that the information provided inadequate notice of charged offenses because it charged all offenses as occurring in Lewis County. We disagree.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, "[a]ll essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). "The information is constitutionally sufficient 'only if all essential elements of a crime, statutory and nonstatutory, are included in the document.'" *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014) (quoting *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995)). "If the State fails to allege every essential element, then the information is insufficient and the charge must be dismissed without prejudice." *Johnson*, 180 Wn.2d at 300-01. An essential element is an element whose specification is necessary to establish the very illegality of the behavior charged. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). We review allegations of constitutional violations de novo. *Zillyette*, 178 Wn.2d at 158.

Amos acknowledges that which county his crimes occurred in is not an essential element of the crimes. Nonetheless, he argues that the charging documents were deficient for the same reason. Amos is rearguing his venue argument. We hold that Amos does not raise a reversible issue.

D.      Knapstad *Motion To Dismiss*

Amos argues that the trial court erred by denying his *Knapstad* motion to dismiss. A defendant who goes to trial cannot appeal the denial of a *Knapstad* motion to dismiss because it

is a pretrial challenge to the sufficiency of the evidence. *State v. Richards*, 109 Wn. App. 648, 653, 36 P.3d 1119 (2001). We hold that Amos cannot appeal the denial of his *Knapstad* motion.

E.       *Amos's Right To Present a Defense and State's Motions in Limine*

Amos argues that the trial court abused its discretion and violated his right to present a defense when granting the State's motions in limine. Specifically, Amos argues that the trial court erred when preventing him from asking about (1) the complaining witnesses' finances, (2) Centralia Police Department bonds, (3) the complaining witnesses' oaths of office, and (4) legal efficacy of the written instruments. We disagree.

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "Defendants have a right to present only relevant evidence." *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). The defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302.

"Whether the exclusion of testimony violated the defendant's Sixth Amendment right to present a defense depends on whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *State v. Duarte Vela*, 200 Wn. App. 306, 326, 402 P.3d 281 (2017). To prevail on a claim that he was deprived of his Sixth Amendment right, a defendant must at least make some plausible showing of how the excluded

evidence would have been both material and favorable to his defense. *State v. Gonzalez*, 110 Wn.2d 738, 750, 757 P.2d 925 (1988). To be material, the proffered fact must "be of consequence in the context of the other facts and the applicable substantive law." *State v. Baldwin*, 111 Wn. App. 631, 638-39, 45 P.3d 1093 (2002).

We review de novo whether the trial court violated a defendant's Sixth Amendment right. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). However, we review a trial court's evidentiary rulings under an abuse of discretion. *Arndt*, 194 Wn.2d at 797. Accordingly, we apply this two-step review process to review the trial court's evidentiary rulings for an abuse of discretion and to consider de novo the constitutional question of whether these rulings deprived Amos of his Sixth Amendment right to present a defense. *Arndt*, 194 Wn.2d at 797.

1.      *Complaining Witnesses' Finances, Centralia Police Department Bond, and Complaining Witnesses' Oaths of Office*

Amos argues that the trial court erred by preventing him from asking the complaining witnesses about their personal finances, bonds, and oaths of office. He argues that these rulings prevented him from arguing his defense theory. He argues that he had to show the complaining witnesses were insolvent to justify subrogation and that the alleged misconduct of the complaining witnesses allowed Amos to sue their public official bonds.

Relevant evidence is generally admissible. ER 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401.

The State moved to exclude evidence of the complaining witnesses' personal finances, the Centralia Police Department bond, and the complaining witnesses' oaths of office. The trial court ruled that these were not relevant to whether Amos submitted the documents or whether

the documents were falsely made. The trial court stated that Amos was allowed to explain why he did what he did, but that these pieces of evidence were not relevant for that.

We hold that the trial court did not abuse its discretion by ruling that the evidence Amos sought to bring in was not relevant to the criminal proceedings regarding forgery and first degree criminal impersonation. These pieces of evidence were not relevant to the elements of the charged crimes. Although Amos's intent was relevant, the exclusion of this evidence did not preclude Amos from presenting evidence of lack of intent to injure or defraud.

2. *Legal Efficacy*

Amos also argues that the trial court erred by preventing evidence regarding legal efficacy. He argues that he was prevented from cross-examining witnesses on this point.

The State moved to exclude evidence regarding legal efficacy of the documents arguing that legal efficacy was not an issue for the jury to decide. Rather, the State argued that legal efficacy was a matter of law already decided by the trial court with the *Knapstad* motions. The trial court granted the motion.

When formulating the jury instructions, Amos argued that legal efficacy needed to be included for the definition of written instrument. The trial court and the State agreed, and legal efficacy was included in the definition of written instrument.

Because the trial court changed its decision, the State recalled Meyer. Meyer testified that based on the language of the document, he and the other complaining witnesses would be liable for the costs that were actually imposed in the 2013 case. Amos had the opportunity to cross-examine Meyer. Meyer testified that, to his knowledge, a sheriff had not levied or executed on his bond. Following the State's recall of Meyer, Amos testified.

35

Regardless of the appropriateness of the trial court's initial decision, the trial court abused its discretion by first excluding evidence of legal efficacy and prohibiting Amos from inquiring about it, but then later instructing the jury on the issue. The trial court's ruling on the motion in limine prevented Amos from cross-examining all the complaining witnesses about an element of forgery. We hold that the trial court abused its discretion by granting the State's motion to exclude evidence regarding legal efficacy and then including this as an element in the jury instructions.

3.      *Sixth Amendment Right To Present a Defense*

We hold that, despite the trial court's ruling regarding the motion in limine for legal efficacy, Amos's right to present a defense was not violated.

Whether Amos's Sixth Amendment right to present a defense was violated depends on whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist. *Duarte Vela*, 200 Wn. App. at 326. Amos must at least make some plausible showing of how the excluded evidence would have been both material and favorable to his defense. *Gonzalez*, 110 Wn.2d at 750.

Here, after the trial court changed its mind regarding the question of who should decide legal efficacy, the State recalled Meyer. Meyer testified regarding the legal efficacy of the documents as they related to the four complaining witnesses. Amos had the opportunity to cross-examine Meyer regarding legal efficacy. Amos then had the opportunity to testify. Regarding the complaining witnesses' personal finances, the Centralia Police Department bond, and the complaining witnesses' oaths of office, that evidence was irrelevant. And Amos was able to present relevant evidence regarding the intent behind his actions. The relevant excluded

evidence—cross-examination of three of the complaining witnesses—does not create a reasonable doubt that did not otherwise exist. We hold that the trial court did not violate Amos's right to present a defense.

F.      *Amos's Discovery Requests*

Amos argues that the trial court erred by denying his discovery requests for public official bonds, oaths of office, and liability insurance policies. We disagree.

"Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the trial court in its discretion may require disclosure to the defendant of [other] relevant material and information." CrR 4.7(e)(1). Both threshold requirements—materiality and reasonableness—must be met before the court may exercise discretion in granting the request. *State v. Norby*, 122 Wn.2d 258, 266, 858 P.2d 210 (1993). A decision as to the scope of criminal discovery is within the trial court's discretion and will not be disturbed absent a manifest abuse of that discretion. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993).

In pretrial proceedings, Amos sought these documents arguing they would be "helpful" to his case. But he fails to show how these documents were of consequence in the context of his defense. Because Amos failed to show materiality, the trial court denied his discovery request.

Amos argues that his discovery requests were material because he attempted to sue the public official bonds. Amos argues that because the jury submitted a question regarding subrogation, the jury wanted to follow his defense theory, and this theory required the requested discovery documents. Amos essentially reasserts that the documents would be helpful, but does not show materiality. We hold that the trial court did not abuse its discretion.

37

G.      *Jury Question Regarding Subrogation*

Amos argues that the trial court erred by declining to instruct the jury regarding subrogation following the jury's question during deliberations. We disagree.

A trial court may exercise its discretion and give additional instructions to a jury during deliberations. *State v. Sublett*, 176 Wn.2d 58, 82, 292 P.3d 715 (2012). Supplemental instructions should not go beyond matters that had been or could have been argued to the jury. *State v. Jasper*, 158 Wn. App. 518, 542, 245 P.3d 228 (2010).

The jury asked for the definition of subrogation. The trial court proposed responding that the jury had the court's instructions and that the jury should continue deliberating. Amos agreed and stated that he had testified regarding his idea of subrogation. The trial court stated that Amos had not requested an instruction regarding the specifics of subrogation. The trial court declined to offer supplemental instructions.

Amos argues that the term subrogation was included in the to-convict for forgery instructions and is a technical term that should have been defined in the instructions. Amos argues that had the jury been instructed on the definition of subrogation, it is highly likely that the jury would have found Amos not guilty.

Subrogation was used as a proper noun in the to-convict instructions only to identify the written instrument. *See, e.g.*, CP at 127 ("falsely made or completed or altered a written instrument, to wit: Notice of Subrogation Bond as to Jonathan Meyer"). Amos fails to show how the trial court abused its discretion regarding the jury question. When the trial court discussed the question with Amos and the State, Amos agreed to the proposed response and stated that he

38

was allowed to testify regarding his thoughts on subrogation. We hold that the trial court did not abuse its discretion when answering the jury question.

H.      *Vindictive Prosecution*

Amos argues that Meyer, the elected prosecutor for Lewis County, conducted a vindictive prosecution. We disagree.

Prosecutorial vindictiveness occurs when the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights. *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006) (plurality opinion). A prosecution is "vindictive" only if designed to penalize a defendant for invoking legally protected rights. *Korum*, 157 Wn.2d at 627. A defendant bears the burden of showing (1) actual vindictiveness or (2) realistic likelihood of vindictiveness. *Korum*, 157 Wn.2d at 627.

Amos shows neither form of vindictiveness. Amos argues that Meyer acted with vindictiveness. But Meyer was not the prosecutor in this case, he was a victim. The State was represented by a prosecutor from outside Lewis County. Further, Amos was charged with colorable crimes based on his actions. No evidence in the record shows that the prosecutor had any improper motive. We reject Amos's vindictive prosecution argument.

I.      *Lesser Included Instructions*

Amos argues that the trial court erred by denying his request for lesser included offense instructions for the crimes of attempted forgery and second degree criminal impersonation. We disagree.

A defendant is entitled to an instruction on a lesser included offense when two conditions are met: (1) "each of the elements of the lesser offense must be a necessary element of the

offense charged" and (2) "the evidence in the case must support an inference that the lesser crime was committed" (the *Workman* test). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The first condition is known as the legal prong, and the second is the factual prong. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). Amos contests the second, factual prong.

For the factual prong, a lesser included instruction is appropriate when the evidence supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense. *Condon*, 182 Wn.2d at 316. When determining if the evidence was sufficient to support the lesser included offense instruction, courts view the evidence in the light most favorable to the party requesting the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). A trial court considers all evidence presented, and this evidence must affirmatively establish the defendant's theory of the case and not merely allow the jury to disbelieve evidence of guilt. *Fernandez-Medina*, 141 Wn.2d at 456. The affirmative evidence to support the lesser included offense requires more than the mere possibility that the jury disbelieves some of the State's evidence. *State v. Brown*, 127 Wn.2d 749, 755, 903 P.2d 459 (1995). Stated another way, the factual prong requires affirmative evidence which raises an inference that a defendant committed only the lesser included offense "to the exclusion of the charged offense." *Fernandez-Medina*, 141 Wn.2d at 455.

We review a trial court's decision regarding the factual prong for an abuse of discretion. *State v. Henderson*, 182 Wn.2d 734, 743, 344 P.3d 1207 (2015). A trial court abuses its discretion when its decision is based on an incorrect legal standard. *Henderson*, 182 Wn.2d at 743.

Amos requested lesser included offense instructions for forgery and first degree criminal impersonation. The trial court correctly found that evidence showed that either the forgeries were committed, or were not committed. The trial court stated that there was no evidence to support attempted forgery because Amos testified that he completed and filed the documents. The trial court denied Amos's request.

A person commits attempted forgery if, with the intent to commit forgery, he does any act which is a substantial step toward the commission of forgery. RCW 9A.28.020; RCW 9A.60.020. Viewing the evidence in a light most favorable to Amos, there was no evidence affirmatively establishing that Amos merely attempted to commit forgery as opposed to forgery itself. We hold that the trial court did not abuse its discretion.

Regarding criminal impersonation, the trial court ruled that the facts did not support an instruction for second degree criminal impersonation and denied Amos's request.

A person commits first degree criminal impersonation when he assumes a false identity and does an act in his assumed character with the intent to defraud. RCW 9A.60.040(1). A person commits second degree criminal impersonation when he (1) claims to be a law enforcement officer or creates an impression that he is a law enforcement officer and (2) under circumstances not amounting to first degree criminal impersonation, does an act with the intent to convey the impression that he is acting in an official capacity and a reasonable person would believe the person is a law enforcement officer. RCW 9A.60.045. Viewing the evidence in a light most favorable to Amos, there was no evidence affirmatively establishing that Amos committed second degree criminal impersonation. Amos was not claiming to act through any

official capacity as a law enforcement officer. We hold that the trial court did not abuse its discretion.

J.      *Sentencing*

Amos argues that the trial court erred in sentencing him to 116 months because RCW 9A.20.021(1)(c) limits the maximum penalty to 5 years. Amos argues that the statutory language in RCW 9.94A.535 is ambiguous. We disagree. To the extent Amos also challenges his sentence as clearly excessive, this argument has been addressed above.[10]

We review issues of statutory interpretation de novo. *State v. Dennis*, 191 Wn.2d 169, 172, 421 P.3d 944 (2018). The purpose of statutory interpretation is to ascertain legislative intent. *Dennis*, 191 Wn.2d at 172. When interpreting a criminal statute, we give a literal and strict interpretation to the plain language. *Dennis*, 191 Wn.2d at 172. If the plain language is unambiguous, subject only to one reasonable interpretation, our inquiry ends. *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013).

Forgery is a class C felony. RCW 9A.60.020(3). "Unless a different maximum sentence for a classified felony is specifically established by a statute" the maximum allowable sentence for a class C felony is "confinement in a state correctional institution for five years." RCW 9A.20.021(1)(c). If a sentencing court imposes consecutive sentences, the sentencing court may stack each individual crime's statutory maximum to determine a defendant's total statutory maximum allowable sentence. *State v. Weller*, 197 Wn. App. 731, 734-35, 391 P.3d 527 (2017).

---

[10] We consider only arguments not already adequately addressed as raised by the defendant's appellate counsel. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

RCW 9.94.535 allows a sentencing court to impose an exceptional sentence, including when the "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). RCW 9.94A.589 sets forth standards for consecutive and concurrent sentences, and a departure from these standards is an exceptional sentence. RCW 9.94A.535. RCW 9.94A.535 states:

> A departure from the standards in RCW 9.94A.589(1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence *subject to the limitations in this section*, and may be appealed by the offender or the state as set forth in RCW 9.94A.585(2) through (6).

(Emphasis added.)

Amos argues that the "subject to the limitations in this section" language in RCW 9.94A.535 is ambiguous and means that the trial court could not properly impose a sentence exceeding the five year limitation in RCW 9A.20.021(1)(c). SAG at 11. We disagree.

We hold that plain language of RCW 9.94A.535's "subject to the limitations in this section" is unambiguous. RCW 9.94A.535 states that a sentencing court cannot deviate from the standards in RCW 9.94A.589(1)-(2) unless that departure is enumerated in RCW 9.94A.535. Here, the enumerated reason was RCW 9.94A.535(2)(c). Nevertheless, because the trial court ruled that the 4 forgery convictions would be served consecutively, the statutory maximum for the convictions stacked, resulting in a total maximum of 20 years. *Weller*, 197 Wn. App. at 734-35; RCW 9A.20.021(1)(c). Amos's 116 month sentence was within the total statutory maximum.

Amos cites RCW 9.94A.537(6) and RCW 9.94A. 506(3) to support his argument. But, RCW 9.94A.537(6) addresses aggravating circumstances found by a jury, and RCW 9.94A.506(3) addresses standard range sentences. Neither statute is applicable here because

multiple current offense for RCW 9.94A.535(2)(c) are not aggravating circumstances to be found by a jury and Amos's sentence was exceptional, not within the standard range. We hold that the trial court did not err when sentencing Amos.

## CONCLUSION

We hold that (1) sufficient evidence supports Amos's forgery convictions, (2) Amos's physical restraint was harmless, (3) Amos did not receive ineffective assistance of counsel, (4) the trial court did not err by allowing Amos to waive counsel or by denying his motion to continue trial, (5) Amos's sentence was properly imposed, and (6) Amos does not raise reversible issues in his SAG. We affirm Amos's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____, C.J.
Le___ C.J.

_____
Sutton, J.

44